# IN THE SUPREME COURT OF IOWA

No. 10–1721

Filed June 29, 2012

**KAREN ROBINSON,**

Appellant,

vs.

**ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Timothy O'Grady, Judge.

Defendant insurance company contends plaintiff's suit for underinsured motorist benefits is barred by two-year contractual limitations period. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT SUMMARY JUDGMENT AFFIRMED.**

Randall J. Shanks of Shanks Law Firm, Council Bluffs, for appellant.

Joseph D. Thornton and Marvin O. Kieckhafer of Smith Peterson Law Firm, LLP, Council Bluffs, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether to judicially invalidate an insurance contract requirement that the insured file her lawsuit for underinsured motorist coverage (UIM) within two years of her auto accident. Plaintiff, Karen Robinson, argues the deadline is unenforceable because, although she was still experiencing pain two years after the accident, only later did she discover the full extent of her injuries and realize her claim exceeded the other driver's liability limits. She filed this UIM action against her insurer, defendant, Allied Property and Casualty Insurance Company, nearly six years after the accident. The district court granted Allied's motion for summary judgment enforcing the contractual deadline as reasonable. The court of appeals reversed, holding the two-year limitation period "was unreasonable under these circumstances." We granted Allied's application for further review.

We hold this two-year UIM insurance policy deadline is enforceable as a matter of law because it matches the two-year statute of limitations in Iowa Code section 614.1(2) (2009) for personal injury actions. The Iowa legislature chose that statutory deadline for lawsuits alleging personal injuries, and we decline to invalidate the same limitations period as unreasonable in a contract for UIM coverage. In both situations, the injured party must file suit within two years even if the full extent of the injury is not reasonably discovered until later.

## I. Background Facts and Proceedings.

On June 15, 2004, Karen Robinson injured her neck in a car crash caused by another driver insured by State Farm with $100,000 liability policy limits. At the time of the accident, Robinson carried an underinsured motorist policy with Allied with a $50,000 limit. The Allied policy provided:

> No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form. Further, *any suit against us under this Coverage Form will be barred unless commenced within two years after the date of the accident.*

(Emphasis added.)

Paramedics took Robinson by ambulance to a hospital for treatment of her injuries, and she was not released until the next day. She was instructed to follow up with her family physician, Dr. Johnson. He diagnosed a neck sprain and strain and prescribed a regimen of physical therapy and anti-inflammatories. In October, Dr. Johnson noted Robinson was continuing to have neck pain and numbness in her arms and hands. He recommended a nerve-conduction study, which was interpreted as normal. In December, Dr. Johnson noted the physical therapy was not helping Robinson and that she "did not have improvement of any significance" and "[c]ontinued to have quite limited [range of motion] and pain with movement." A second nerve-conduction study conducted on December 29 again failed to document a physical abnormality.

In January 2005, although Robinson was still experiencing discomfort, Dr. Johnson released her from his care for the injuries sustained in her accident. In a report authored in March 2005, Dr. Johnson stated: "I think as time progresses, the soft tissue injury will gradually repair itself. It is not going to be an overnight type resolution." He predicted "no possible complications or negative secondary effects" and did not anticipate any additional procedures or treatments. "It is my opinion," Dr. Johnson wrote, "that there will be no restrictions upon Ms. Robinson and it is my opinion that this will gradually improve with time although it will probably be a long time."

On August 1, Robinson's attorney opened settlement discussions with State Farm, the insurance carrier for the driver who caused the accident. Based upon Dr. Johnson's prognosis and her medical expenses of $5111, her initial settlement demand was for $40,000, well within State Farm's $100,000 limits. State Farm made a counteroffer to settle for $7000. Robinson subsequently reduced her settlement demand to $30,000 and then $20,000 before negotiations with State Farm broke down. She filed suit against State Farm's insured on October 27, 2005, with more than eight months remaining in the two-year limitations period.

Meanwhile, Robinson had returned to Dr. Johnson the preceding month because of continuing neck pain. She underwent a cervical MRI on September 10, 2005. After Robinson's MRI study reported a normal cervical spine, she consulted a pain specialist who administered cervical facet joint injections in November and December of 2005. The injections provided temporary pain relief for a few weeks each time, but her pain returned.

As the two-year anniversary of her car accident approached, her neck and back pain persisted, and her pending tort action against State Farm's insured was nowhere close to settlement. In the first six months of 2006, Robinson continued to see Dr. Johnson occasionally with complaints of neck and back pain. Robinson's attorney did not file a UIM action or ask Allied to suspend the June 4, 2006 deadline through a tolling agreement, and that contractual deadline expired.

In November 2006, two years and three months after the accident, Robinson underwent an MRI of her lumbar spine, which indicated a mild central bulge in L4–5. A month later, an x-ray of her cervical spine indicated mild C6–7 degenerative disc changes. She began physical

therapy in late December. Although the therapy provided some relief, she continued to experience pain. In February 2007, Robinson was examined by a surgeon, Dr. Jensen, who for the first time proposed a surgical option for Robinson's condition. Dr. Jensen performed an anterior cervical interbody discectomy on April 7, 2007. The surgery was successful, and Robinson experienced significant improvement.

Dr. Jensen authored a report in July 2007 stating Robinson's "[c]urrent prognosis is guarded. She may well harbor a permanent degree of paracervical pain as a result of her injury." He estimated future medical expenses in the range of $5000 to $10,000 and predicted that Robinson will have permanent activity restrictions.

At the end of July 2008, State Farm offered its policy limit of $100,000 to settle Robinson's claim. Robinson promptly notified Allied of this development and also offered to settle her UIM claim against Allied for $50,000, the policy limit. On August 13, Allied denied her UIM claim as untimely based on the two-year limitation contained in Robinson's insurance contract. On August 28, Robinson accepted State Farm's policy limits settlement.

Robinson waited over another twenty-one months to file this UIM action against Allied on May 13, 2010, nearly six years after her auto accident. Allied moved for summary judgment on grounds the two-year deadline in its UIM policy had expired. Robinson resisted, arguing the deadline was unreasonable because she was unable to ascertain her damages within two years of her accident. The district court ruled the two-year provision was reasonable and entered summary judgment for Allied because the UIM claim was untimely. Robinson appealed, and the court of appeals reversed the summary judgment, concluding the two-year limitation was unreasonable under the circumstances because

Robinson was not "able to ascertain her damages" within that period. We granted Allied's application for further review.

## II. Scope of Review.

We review a district court's grant of summary judgment for errors at law. *Nicodemus v. Milwaukee Mut. Ins. Co.*, 612 N.W.2d 785, 786 (Iowa 2000); Iowa R. App. P. 6.907. We view the evidence in the light most favorable to the nonmoving party. *Faeth v. State Farm Mut. Auto. Ins. Co.*, 707 N.W.2d 328, 331 (Iowa 2005). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Iowa R. Civ. P. 1.981(3).

In this case, the facts relevant to the limitations issue are undisputed, so the enforceability of the contractual limitations period is a question of law for the court. *Nicodemus*, 612 N.W.2d at 787. We will decide if "the district court correctly applied the law to the undisputed facts in deciding that [Allied] was entitled to summary judgment." *Id.*

## III. Analysis.

Iowa law requires insurers to include UIM coverage in motor vehicle liability insurance policies unless rejected by the insured. Iowa Code § 516A.1. A UIM claim is contractual and therefore subject to the ten-year statute of limitations for written contracts. *See Douglass v. Am. Family Mut. Ins. Co.*, 508 N.W.2d 665, 666 (Iowa 1993) (citing Iowa Code section 614.1(5) (1991)), *overruled on other grounds by Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 784 (Iowa 2000). However, as we noted in *Douglass*, "[u]nder general contract law, it is clear that the parties may agree to a modification of statutory time limitations." *Id.* We emphasized that "Iowa has long recognized the rights of insurers to limit time for claims, irrespective of a legislative imprimatur on such provisions." *Id.* at

667. In that case, we surveyed the authorities to conclude that the contractual deadline must allow the insured a reasonable period to sue for the policy benefits. *Id.* at 666–68.

We specifically held in *Douglass* "that the two-year limitation provided by the policy was valid and enforceable." *Id.* at 668. We enforced that deadline even though the insured "was not aware that the tortfeasors were judgment proof until the two years had passed." *Id.* at 667. We affirmed the summary judgment in favor of the insurer dismissing the insured's claim for uninsured motorist (UM) coverage filed more than two years after the accident. *Id.* at 668. We reasoned that the two-year contractual limitation period matched the two-year statute of limitations for a personal injury action against the tortfeasor. *Id.* at 667 ("An uninsured motorist provision that allows two years to sue, therefore, grants as many rights as the plaintiff would have in the case of an insured tortfeasor."). We recently reiterated that "an insurer may reasonably reduce the ten-year statutory limitations period for contractual claims to a two-year period for filing suit against the insurer." *Faeth*, 707 N.W.2d at 334 n.3.

Robinson argues the two-year contractual deadline in her Allied policy is unreasonable under the circumstances because she could not have known the extent of her injuries within that deadline. She relies primarily on *Faeth* and *Nicodemus*, which invalidated as unreasonable contractual deadlines for UIM claims under different circumstances. The district court, in a well-reasoned, ten-page ruling concluded:

> While Ms. Robinson may have had to file suit before she realized the full extent of her damages, none of the Iowa cases dealing with the present issue have held that it is unreasonable to require an insured to sue before all components of damages are actually realized. Even the discovery rule does not permit such delay.

Accordingly, the district court granted Allied's motion for summary judgment because Robinson failed to file her UIM claim within the two years allowed by her policy.

A three-judge panel of the court of appeals viewed Iowa law differently. The panel concluded the reasonableness of a contractual limitations period is determined in light of the circumstances of the particular case. The appellate panel concluded Robinson was unable to ascertain that her damages exceeded the tortfeasor's liability limits before her surgery the third year following the accident. The panel determined the two-year contractual deadline was unreasonable under these circumstances.

We have not previously invalidated a two-year contractual UIM deadline on grounds the insured did not reasonably discover the full extent of her injuries until later. We decline to do so here for the reasons that follow.

**A. Robinson's Reliance on *Faeth* and *Nicodemus*.** In *Faeth* and *Nicodemus*, we invalidated contractual deadlines as unreasonable on grounds inapplicable here. In *Faeth*, the plaintiff was injured when his vehicle was rear-ended by a truck owned by Umthun Trucking Company and operated by its employee. 707 N.W.2d at 330. Umthun was self-insured for liability under the authority of the United States Department of Transportation. *Id.* Plaintiff timely sued Umthun in tort within two years of the accident. *Id.* Umthun became insolvent over four years after the accident. We held "the postaccident insolvency of a legally sanctioned self-insurer" triggered the statutory right to uninsured motorists benefits. *Id.* at 333. Faeth's policy required UM claims to be filed within two years of the accident. *Id.* at 330. Significantly for present purposes, Faeth could not have filed a claim for UM benefits

during the two-year contractual limitations period because Umthun was solvent and therefore deemed insured. *Id.* at 334–35. Under those unique circumstances, we held the two-year limitation in the policy was unreasonable as applied because it "left Faeth with no time to sue following the accrual of his claim." *Id.* at 335. We noted that UM benefits are statutorily required and would be forfeited if the contractual deadline was enforced. *Id.* at 334–35. By contrast, Robinson had two years from her accident during which time she could have sued Allied for UIM benefits. We do not equate her lack of appreciation of the extent of her injuries to Faeth's legal inability to bring a UM claim until the self-insured trucker became insolvent.

*Nicodemus* also fails to support Robinson's position. The contractual limitations provision in that case required the insured to *conclude* her tort action by settlement or judgment before filing her UIM suit within two years of her accident. *Nicodemus*, 612 N.W.2d at 787–88. We contrasted that policy provision with the two-year statute of limitations for personal injury claims in Iowa Code section 614.1(2), noting "the legislature has deemed it appropriate to give an injured party two years simply to investigate her claim against a tortfeasor and get her lawsuit on file." *Id.* at 788. Here, the Allied policy merely required Robinson to file her lawsuit within two years—she was not required to also conclude her tort claim by settlement or judgment by that deadline. The policy provision found per se unreasonable in *Nicodemus* was much more onerous than the tort statute of limitations. By contrast, the Allied provision simply imposed the same burden on Robinson as the legislature imposed on tort claimants—the obligation to file suit by the two-year anniversary of the accident.

Neither *Nicodemus* nor *Faeth* required a fact-intensive inquiry into when the insured knew or should have known her damages exceeded the tortfeasor's liability limits.[1]  We recognize that *Faeth* invalidated the contractual limitation "as applied here."  707 N.W.2d at 335.  But, we did not have to engage in any factual analysis to reach that conclusion.  The only relevant "fact" we had to consider was that Umthun became insolvent more than two years after the accident.  On that basis, we declined to enforce the clause as a matter of law.  *Id.* at 335 n.4.  Here, by contrast, we are asked to embark on an approach that would require sifting through the medical evidence to determine whether the insured had a reasonable basis to believe her damages exceeded the tortfeasor's policy limits.  Neither *Nicodemus* nor *Faeth* requires us to invalidate

---

[1]After *Faeth*, we reiterated the well-settled tenet of contract interpretation that "whether an agreement is unconscionable must be determined at the time it was entered."  *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 81 (Iowa 2011) (citing *Casey v. Lupkes*, 286 N.W.2d 204, 208 (Iowa 1979)).  That is the categorical approach we follow today.  The *Nicodemus* court quoted part of a sentence from a 1963 treatise that "[t]he reasonableness of a contractual limitations period is determined in ' "light of the provisions of the contract and the circumstances of its performance and enforcement." ' "  *Nicodemus*, 612 N.W.2d at 787 (quoting 1A Arthur L. Corbin, *Corbin on Contracts* § 218, at 311–12 (1963) [hereinafter Corbin]).  This language, in context, does not require the reasonableness of the limitation to be determined case by case, as applied to the particular facts.  The full sentence in that treatise reads as follows:

> Although the parties cannot *at the time of contracting* effectively bargain not to plead a statute or that the time for suit shall be longer than that allowed by statute, it is not against the public interest that *they shall then agree* upon a shorter time limit than that fixed by statute if the time agreed upon is not so short as to be unreasonable in light of the provisions of the contract and the circumstances of its performance and enforcement.

Corbin § 218, at 311 (emphasis added).  The very next sentence in the Corbin treatise states: "Such time limits in insurance policies have often been held valid."  *Id.* (footnote omitted).  The italicized language confirms whether the limitations period is "reasonable" is determined as of the time the contract is entered.  The "circumstances of its performance and enforcement" refer to the type of contract at issue, here, a claim for UIM coverage, consistent with a categorical approach.  Thus, the UIM provision in *Nicodemus* was found unreasonable on its face.  612 N.W.2d at 788–89.  The categorical approach is equally appropriate here.

Allied's two-year deadline as unreasonable on grounds that Robinson could not ascertain the full extent of her injuries within that period.

**B. A Contractual UIM Limitation Matching the Two-Year Statute of Limitations for Personal Injury Tort Claims Is Per Se Reasonable.** Our legislature has determined it is reasonable to require tort claimants to file lawsuits for personal injuries within two years "after their causes accrue." Iowa Code § 614.1(2). Importantly, the statutory limitations clock begins to run on the date of the motor vehicle accident, even for more serious injuries that first appear over two years later. *LeBeau v. Dimig*, 446 N.W.2d 800, 802–03 (Iowa 1989). In *LeBeau*, we held a lawsuit seeking recovery for epilepsy caused by car accident was time-barred under section 614.1(2), even though plaintiff thought she had only minor neck injuries until her epilepsy manifested after the two-year limitation expired. *Id.* Robinson's argument that her two-year contractual limitation is unreasonable because she did not know the full extent of her injuries is at odds with the policy determination our legislature made in analogous tort cases.

UIM actions are contract claims, but the trial requires juries to consider evidence and make findings typical of motor vehicle negligence actions, including the comparative fault of both drivers and the extent of personal injuries. Accordingly, it makes good sense for an insurer to provide for a UIM limitation period matching the two-year deadline in Iowa Code section 614.1(2) to file suit for personal injuries.

> The purpose of our statutes of limitations is to spare courts the burden of adjudicating stale claims after memories have faded, witnesses have died, and evidence has been lost. This purpose explains why the limitation on an action on a written contract is longer than the limitation on an action in tort; generally, the evidence surrounding a tort claim is more likely to disappear or become less reliable over time than the evidence surrounding a written contract. *Cf. Matherly v.*

> *Hanson*, 359 N.W.2d 450, 457 (Iowa 1984) (observing the policy reasons for a shorter limitations period on unwritten contracts than on written contracts).

*Wetherbee v. Econ. Fire & Cas. Co.*, 508 N.W.2d 657, 662 (Iowa 1993) (McGiverin, C.J., concurring) (citation omitted). In the absence of an enforceable contractual limitations period, UIM claims are governed by the ten-year statute of limitations for written contracts. *Faeth*, 707 N.W.2d at 335. This would require UIM insurers to defend claims with stale evidence.

We hold it is reasonable, as a matter of law, for a UIM insurer to select the same two-year deadline from the date of the accident to file a UIM claim as the legislature prescribed for filing a personal injury tort action. *See Hamm*, 612 N.W.2d at 784 ("[T]he insurance company has the ability, if it so chooses, to clearly articulate the applicable limitations period for claims against the tortfeasor and the insurer, and the event upon which the limitations period begins to run."); *see also Faeth*, 707 N.W.2d at 334 n.3 ("Our decision in *Hamm* did not affect our holding in *Douglass* that an insurer may reasonably reduce the ten-year statutory limitations period for contractual claims to a two-year period for filing suits against the insurer."). In *Douglass*, we upheld the two-year contractual limitation specifically because it matched the statutory deadline for filing personal injury lawsuits in section 614.1(2). 508 N.W.2d at 667. We rejected the insured's argument the deadline was unreasonable in that case because she did not discover the tortfeasors were judgment proof until over two years after the accident. *Id.* Similarly, we decline to conclude Allied's two-year deadline is unreasonable as applied to Robinson because she did not ascertain the full extent of her injuries within that time.

Our precedent is consistent with other jurisdictions that enforce UIM contractual deadlines matching the state's statute of limitations for personal injury tort actions. The Ohio Supreme Court made clear a two-year contractual deadline to bring UIM claims is enforceable because it matches that state's statutory deadline for filing tort claims for personal injuries:

> Consistent with our analysis, a *two-year* period, such as that provided for bodily injury actions in R.C. 2305.10, would be a reasonable and appropriate period of time for an insured who has suffered bodily injuries to commence an action or proceeding for payment of benefits under the uninsured or underinsured motorist provisions of an insurance policy.

*Miller v. Progressive Cas. Ins. Co.*, 635 N.E.2d 317, 321 (Ohio 1994). *Miller* held a one-year policy deadline is unreasonable because it provides the insured less protection than if the tortfeasor had been adequately insured—the same reason we invalidated the UIM limitation in *Nicodemus. Id.* The *Miller* court, however, emphasized a two-year limitations period to file a UIM claim is reasonable because it matches the time statutorily allowed to sue the tortfeasor—a deadline the legislature had deemed reasonable. *Id.*

Illinois appellate courts have employed a similar analysis in evaluating the enforceability of UIM contractual deadlines. *See Shelton v. Country Mut. Ins. Co.*, 515 N.E.2d 235, 240 (Ill. App. 1987) (noting the insurer is placed "in the boots of the tortfeasor" and the "insured . . . should not be conferred with rights any different" from a claim against the tortfeasor); *Coyne v. Country Mut. Ins. Co.*, 349 N.E.2d 485, 486 (Ill. App. 1976) ("Here the contractual provision has a two year limitation, the same amount of time plaintiffs would have had to determine financial

responsibility for an accident with an insured motorist.").[2]  Thus, in *Parish v. Country Mutual Insurance Co.*, the appellate court affirmed dismissal of the UIM claim brought by the insured who, like Robinson, did not appreciate the extent of her injuries until she had surgery over two years after the accident.  814 N.E.2d 166, 169–70 (Ill. App. Ct. 2004).

As we said in *Douglass* in the context of uninsured motorist coverage:

> Of course, if the plaintiff had sued a tortfeasor who did have insurance, she would have to do so within two years. An uninsured motorist provision that allows two years to sue, therefore, grants as many rights as the plaintiff would have in the case of an insured tortfeasor.

508 N.W.2d at 667 (citation omitted).  We are applying the same symmetry principle here.[3]  The approach advocated by Robinson, on the other hand, could result in an anomaly.  Suppose Robinson's negotiations with State Farm had *not* broken down and the parties had settled for $20,000 in the fall of 2005.  Later, Robinson discovered her injuries were more serious than she previously thought.  Clearly, she could not sue the tortfeasor again, regardless of the circumstances, because she had released her tort claim.  But, could she sue Allied, giving a credit for the tortfeasor's policy limits?  Our precedents suggest she could.  *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 573–74 (Iowa 1997) (holding release of underinsured motorist does not bar claim

---

[2]We cited *Coyne* with approval in *Douglass*, 508 N.W.2d at 667.

[3]We have discussed both a "broad coverage" view and a "narrow coverage" view with respect to underinsurance coverage.  *See Mewes v. State Farm Auto. Ins. Co.*, 530 N.W.2d 718, 723–24 (Iowa 1995).  However, under both "views," the injured party does not end up better off than he or she would have been with a tortfeasor who was fully insured for the loss that occurred.  *Id.*

for recovery of UIM benefits). This would make Robinson better off than she would have been with a fully insured tortfeasor.

**C. Ethical and Practical Considerations.** Robinson argues applying the two-year statutory limitation for tort claims is unreasonable because to recover on her UIM claim she must additionally allege and prove her damages exceed the tortfeasor's $100,000 liability limits, which she was incapable of doing before Dr. Jensen performed surgery on her nearly three years after her accident. Indeed, she suggests to file a UIM action when the insured's damages appear unlikely to exceed the underlying liability limits would risk sanctions under Iowa Rule of Civil Procedure 1.413(1) for filing frivolous pleadings. Her concern is overstated and belied by the common practice in Iowa of filing UIM claims together with tort claims against the other driver. *See Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009) (indicating that the standard to be used in determining the reasonableness of an attorney's conduct for rule 1.413 purposes is that of " 'a reasonably competent attorney admitted to practice before the district court' " (quoting *Weigel v. Weigel*, 467 N.W.2d 277, 281 (Iowa 1991)). We do not see this case as presenting claimants' counsel with a *Hobson*'s choice between filing frivolous claims or losing what might be a meritorious UIM claim. If the UIM claim potentially has merit, no Iowa court should impose sanctions for filing it to toll the contractual deadline. Indeed, in *Nicodemus*, we noted "the insured could simply commence her action against the insurer at the same time she files suit against the underinsured motorist, thereby complying with the two-year limitations period governing both claims," and we further observed that, "this course of action is certainly permissible under our UIM statute." 612 N.W.2d at 788. We invalidated as per se unreasonable the contractual limitations

period in that case that required the insured to conclude her tort claim before filing her UIM claim within two years of the accident. *Id.* at 789.

Our state's trial bar has a long-standing custom and practice of filing UIM claims together with the tort action against the driver. The UIM claim is typically stayed with the UIM insurer to be bound by the verdict in the underlying tort action. *See Wilson v. Farm Bureau Mut. Ins. Co.*, 714 N.W.2d 250, 262 (Iowa 2006) (recognizing UIM insurer bound by original judgment on jury verdict in tort action); *Handley v. Farm Bureau Mut. Ins. Co.*, 467 N.W.2d 247, 249–50 (Iowa 1991) (addressing bifurcation).

Attorneys facing a contractual deadline should assume the UIM action will be barred once the contractual deadline expires and should act to protect the client's interests. We could find no case sanctioning an attorney for a frivolous pleading filed to preserve a UIM claim on the eve of a deadline. The reasonable course of action is simply for the plaintiff's counsel to request a tolling agreement from the UIM insurer, which in all likelihood would be forthcoming. If the UIM insurer balks, the attorney reasonably can file the UIM claim without violating Iowa Rule of Civil Procedure 1.413 or Iowa Court Rule 32:3.1. The future course of a person's medical condition—especially a neck injury as here—is inherently open to some doubt. An attorney who has made a reasonable inquiry and has not received a definitive determination that the client's damages will be within the tortfeasor's policy limits does not violate either rule by bringing a precautionary action against the UIM carrier. The district court would have discretion to stay the UIM claim pending resolution of the underlying tort action or to permit the case to proceed to trial, as many Iowa personal injury actions do while the plaintiff continues medical treatment. UIM insurers do not like to incur avoidable

defense costs any more than plaintiff's attorneys like to prosecute UIM claims expected to be resolved within the tortfeasor's policy limits. Both sides will be motivated to agree to toll the UIM contractual statute of limitations under the circumstances of this case.[4]

Illinois courts have been down this road repeatedly. The *Parish* court's analysis addresses the practical concerns raised by Robinson as follows:

> "[T]he insured can sufficiently allege a cause of action for UIM motorist benefits if she has sufficient facts to proceed against the tortfeasor. The only additional allegations required are that the insured's damages and UM–UIM coverage exceed the tortfeasor's liability insurance. Insurance companies that utilize suit limitation provisions must expect to be subjected to lawsuits which allege the likelihood of liability under the UM–UIM coverage. Of course, the insurance company can avoid the lawsuit by agreeing with the insured to put the UM–UIM issue on hold until the resolution of the action against the tortfeasor. As a practical matter, this is an insurance company's probable (and most reasonable) course of action."

814 N.E.2d at 169–70 (quoting *Vansickle v. Country Mut. Ins. Co.*, 651 N.E.2d 706, 707 (Ill. App. Ct. 1995)).

If we were to adopt Robinson's position, insurance underwriters would have to assume going forward when setting UIM rates in Iowa that two-year contractual limitation periods would be unenforceable whenever

---

[4]We are concerned about conserving scarce judicial resources. In our view, the approach we have outlined with respect to UIM claims is less taxing on judicial resources than litigating the reasonableness of the two-year deadline as applied case by case. Under an as-applied analysis, courts and perhaps juries would have to make case-by-case determinations based on medical chronologies whether a claim is even timely before getting to the merits of that claim.

We are also concerned about fairness to the injured party. Even under a case-by-case reasonableness approach, this plaintiff sued nearly six years after the accident and three years after discovering the full extent of her injuries. We do not believe Robinson had a reasonable expectation of coverage at that point, given the two-year statute of limitations period for personal injury claims and the corresponding two-year contractual limitations period in her insurance policy.

the insured can argue he reasonably did not realize his claim would exceed the underlying liability limits. Such fact-sensitive inquiries are poorly suited for summary judgment and will increase the cost of litigation. More insureds will be able to sue their UIM insurer ten years after the accident after avoiding shorter limitations periods in the insurance contract. This would inject uncertainty into our contract law by invalidating a bright-line, unambiguous, and reasonable contractual deadline to file UIM claims within two years of the accident. It is easy to foresee the result will be to increase auto insurance rates for Iowans.[5]

**D. Freedom of Contract.** We should be reluctant to interfere with the freedom of contract under these circumstances. As the *Vansickle* court recognized, "[i]nsurance companies are entitled to reasonably limit their exposure from an insurance contract." 651 N.E.2d at 707. To declare a contractual deadline for UM or UIM claims unenforceable "is an extraordinary remedy, and we find it unpalatable." *Id.* Our own precedent reflects our traditional caution when asked to

---

[5]Insurers are, of course, free to sell UIM coverage with limitations periods longer than two years or to tie the longer limitation period to the resolution of the tort claim or the date by which it becomes reasonably apparent to the insured his or her damages are likely to exceed the other driver's liability limits. We decline to judicially rewrite or blue pencil the Allied provision allowing two years from the date of the accident. That is for the marketplace to resolve, with rates set accordingly.

Basic economics teaches that, if Iowans really want more extensive coverage and are willing to pay for it, the market will make it available. Moreover, the representatives of Iowa's elected government already have the ability to mandate more extensive coverage if that is what Iowans want. *See* Iowa Code § 516A.1 ("The form and provisions of such coverage shall be examined and approved by the commissioner of insurance."). The fundamental problem with allowing the enforceability of contract language to depend on a case-by-case determination of whether the insured reasonably knew his or her claim exceeded the tortfeasor's policy limits is that it increases litigation costs while creating an uncertain liability. Insurers have to charge a premium to account for the potential risk that contract language will be enforced as well as the costs of litigating that issue. The coverage that Allied provided in this case is not "illusory." It is the same contractual limitations period that we approved in *Douglass* and again in *Faeth.*

invalidate contract provisions. "[T]here is a certain danger in too freely invalidating private contracts on the basis of public policy. This concern is especially valid in the area of insurance contracts . . . ." *Skyline Harvestore Sys., Inc. v. Centennial Ins. Co.*, 331 N.W.2d 106, 109 (Iowa 1983). To do so " 'is to mount "a very unruly horse, and when you once get astride it, you never know where it will carry you." ' " *Grinnell Mut. Reins. Co. v. Jungling*, 654 N.W.2d 530, 540 (Iowa 2002) (quoting *Skyline Harvestore Sys.*, 331 N.W.2d at 109)).[6]

We decline Robinson's invitation to mount the "unruly horse."

**IV. Disposition.**

For these reasons, we determine that the contractual deadline requiring Robinson to file her UIM claim within two years of her accident is reasonable and enforceable as a matter of law. Accordingly, we vacate the court of appeals decision and affirm the district court's summary judgment in favor of Allied.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT SUMMARY JUDGMENT AFFIRMED.**

All justices concur except Hecht, Wiggins, and Appel, JJ., who dissent.

---

[6]*See also Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 687 (Iowa 2008) (enforcing named driver exclusion in UIM policy and stating "[t]he power to invalidate a contract on public policy grounds must be used cautiously and exercised only in cases free from doubt" (citation and internal quotation marks omitted)). In *Galloway v. State*, our court observed, "[a]s the freedom to contract weighs in the balance when public policy grounds are asserted against the enforcement of a contract, courts must be attentive to prudential considerations and exercise caution." 790 N.W.2d 252, 256 (Iowa 2010). The *Galloway* majority nevertheless relied on public policy to invalidate a parent's preaccident liability waiver used for a school field trip. *Id.* at 258–59. Two dissenters appropriately would have deferred to the legislature to make the policy determination whether to disallow such contracts. *Id.* at 259. The majority opinion in *Galloway* recently was described as an "outlier," with most states enforcing such liability waivers for nonprofit activities sponsored by schools, volunteers, or community organizations. *Kelly v. United States*, 809 F. Supp. 2d 429, 437 (E.D.N.C. 2011).

#10–1721, *Robinson v. Allied Prop. & Cas. Ins. Co.*

**HECHT, Justice (dissenting).**

I cannot join the majority opinion in this case because it fails to properly apply a rule of law employed in recent decisions of this court, it ignores the fundamental difference between tort and contract claims, and condones the marketing of illusory underinsured motorist insurance coverage in Iowa.

Although the Iowa legislature prescribed ten years as the time limit for filing suit for breach of a written contract, Iowa Code § 614.1(5) (2009), our decisions in *Faeth v. State Farm Mutual Automobile Insurance Co.*, 707 N.W.2d 328, 334 (Iowa 2005), and *Nicodemus v. Milwaukee Mutual Insurance Co.*, 612 N.W.2d 785, 787 (Iowa 2000), reaffirmed that an insurer can impose a shorter time limit for filing suit on underinsured (UIM) and uninsured (UM) motorist claims. However, these decisions held that the time limit established in an insurance contract for such suits must be reasonable. *Faeth,* 707 N.W.2d at 334; *Nicodemus*, 612 N.W.2d at 787. Our decisions in *Faeth* and *Nicodemus* acknowledged and respected the importance of freedom of contract, but they did so with an understanding of the fact that insurance contracts are a different breed. Insurance contracts are "adhesionary" in nature and therefore different than other arms-length agreements. This is illustrated by the fact that Iowans who purchase automobile liability insurance do not have an opportunity to bargain with their insurance company about the amount of time they will be permitted to sue to collect UIM benefits if they are badly injured and later discover the person who caused the injury failed to purchase enough liability insurance to cover the damages. Instead, the insurance company dictates this term of the coverage. The insured takes what the insurance company offers and

pays the premium. Because they are largely "take-it-or-leave-it" propositions, public policy considerations underlying the law have led to certain mandates imposed on insurance contracts that are not imposed in other contractual contexts. As the majority has noted, for example, Iowa Code chapter 516A limits insurers' freedom of contract by requiring companies selling automobile insurance in Iowa to offer UM and UIM coverage as a condition of doing business here. This mandate limiting freedom of contract arose, at least in part, because market forces were deemed inadequate to consistently provide important kinds of insurance protections needed by Iowans.

The common law rule followed by this court in *Faeth* and *Nicodemus* similarly limits freedom of contract by allowing insurance companies to shorten the time period which policyholders may file suit to recover UIM and UM benefits only if the time period is reasonable. We implicitly recognized that if left to market forces unrestricted by boundaries of reasonableness, companies selling contracts for UM and UIM coverage could so shorten the time frame for suits against them as to effectively render the coverage meaningless. In *Faeth* and *Nicodemus*, we refused to enforce contractual provisions allowing insureds only two years after an injury to sue their insurance companies. *Faeth,* 707 N.W.2d at 335; *Nicodemus*, 612 N.W.2d at 789. Our refusal to enforce the shortened contractual periods of two years for filing suit was based on the fact that the factual circumstances confronting Faeth and Nicodemus made it unreasonable to expect them to sue their insurance companies within two years after injury-causing car crashes. *Faeth,* 707 N.W.2d at 334–35; *Nicodemus*, 612 N.W.2d at 788–89. Without the common law's mandate of reasonableness, the insurance coverage

purchased by Faeth and Nicodemus to protect them against financially irresponsible drivers would have been illusory.

The majority's attempts to distinguish our decisions in *Faeth* and *Nicodemus* and justify the failure to grant Robinson the protection of the reasonableness standard are singularly unconvincing. Although I grant the accuracy—at the most superficial level—of the proposition that the factual circumstances faced by Robinson during the two years after her injury were different than those faced by the plaintiffs in *Faeth* and *Nicodemus*, this proposition proves nothing that would help us decide this case correctly. The factual circumstances faced by Faeth were of course not the same as those faced by Nicodemus, but we found unreasonable and unenforceable as a matter of law the contractual provisions limiting to two years the time in which both of those plaintiffs could sue their insurance companies. The relevance of *Faeth* and *Nicodemus* to our decision in this case is derived not from identical facts, but rather from the principle of law we consistently applied in those cases and should apply in this case: A contractual provision requiring an insured to sue for UIM or UM benefits within two years after an injury will not be enforced if it is unreasonable under the circumstances faced by the insured. *Faeth,* 707 N.W.2d at 334; *Nicodemus,* 612 N.W.2d at 787. In my view, the factual circumstances faced by Robinson during the two years after her injury provide reasons to deny enforcement of the contractual limitation period that are as equally compelling as those deemed sufficient in *Faeth* and *Nicodemus*. In Robinson's case—just as in *Faeth* and *Nicodemus*—a two-year contractual limitation provision so nullified the purpose of the coverage as to make it functionally worthless.

Robinson diligently pursued medical care after her injury and followed the recommendations of her doctors in securing treatment.

When she began negotiating with State Farm, the other driver's insurance company, more than a year after the accident, she had accumulated a little over $5000 in medical bills and had a report from her doctor indicating she was not going to need further medical care and would likely not incur any further medical expenses. She was informed that she had suffered a sprain-strain injury and that her body would slowly, but surely, heal over time with no residual permanent restrictions. When the contractual two-year limitation period expired, Robinson knew she was still experiencing pain in her neck, but this was precisely what her doctor had told her to expect as part of the healing process. She still, therefore, had no reason to understand her damages could exceed State Farm's $100,000 liability coverage limit insuring the person who caused the injury. Indeed, Robinson's settlement negotiations with State Farm prior to June 15, 2006, suggest State Farm valued the claim at $8000 and that Robinson and her counsel valued it at $20,000 when negotiations ended. It was not until two years and eight months after the accident that a physician recommended a cervical interbody discectomy procedure—a recommendation that caused Robinson to first realize the other driver's liability insurance coverage limit would be insufficient to fully compensate her for her damages. Under these factual circumstances, "[t]he two-year limitation from the date of the accident contained in [Allied's] policy left [Robinson] with no time to sue following the accrual of [her] claim." *Faeth,* 707 N.W.2d at 335. Applying the reasonableness test as we did in *Faeth* and *Nicodemus,* I would hold the provision allowing Robinson only two years from the date of her injury to file suit under Allied's policy is unreasonable and unenforceable under the circumstances of this case. In light of the goal of underinsured motorist coverage—to fully

compensate the insured for the injuries suffered—I cannot find reasonable a limitations period which not only began to run, but also expired, before Robinson knew or could have reasonably known her damages would exceed the liability insurance coverage limit of the party who caused the injury.

The majority concludes two years after the occurrence of an injury is, as a matter of law, an adequate length of time for an insured to file suit against his or her UIM carrier because the same time limit applies to suits filed against the party who caused the injury.[7] The majority emphasizes that our decision in *Douglass v. American Family Mutual* allowed enforcement of a contractual limit of two years for filing suit for UM coverage even though the insured "was not aware that the tortfeasors were judgment proof until the two years had passed." *Douglass v. Am. Family Mut. Ins. Co.,* 508 N.W.2d 665, 667–68 (Iowa 1993) *overruled on other grounds by Hamm v. Allied Mut. Ins. Co.,* 612 N.W.2d 775, 784

---

[7]Further, it is unclear whether the majority's conclusion that a contractual UIM limitation period matching the tort statute of limitation is "per se reasonable" is intended to overrule the well-settled tenet of contract interpretation that "[t]he reasonableness of a contractual limitations period is determined in ' "light of the provisions of the contract and the circumstances of its performance and enforcement." ' " *Nicodemus,* 612 N.W.2d at 787 (quoting 1A Arthur L. Corbin, *Corbin on Contracts* § 218, at 311–12 (1963)). I disagree with the majority's interpretation of the quoted language from Corbin's treatise. The circumstances of a UIM contract's performance and enforcement to which the esteemed treatise author adverted are those faced by the insured from the time of injury to the time she knows or should know her damages could exceed the liability insurance coverage limits of the other driver. I find unpersuasive the majority's contention that the language quoted from the treatise refers to a "categorical" reasonableness assessment as of the time the adhesionary contract is formed. A more reasonable interpretation of Corbin's words would understand "circumstances" is a reference to the actual circumstances in which the limitation period is to be enforced against an insured. Those actual circumstances are, as we have seen in Robinson's case, unknown and unknowable at the time the UIM coverage commences. Thus, I strongly believe this court took nothing from Corbin's treatise out of context and correctly expressed the essence of his understanding of the reasonableness constraint in *Nicodemus.* *See Nicodemus,* 612 N.W.2d at 787.

(Iowa 2000). It should be noted, however, that our decision noted no factual circumstances in that case making it impossible or even difficult for Douglass to have learned within two years after the injury that the person who caused it was uninsured. In deciding to enforce the provision limiting the time for Douglass' suit, we did not suggest that for public policy reasons, or any other reasons, the limitation period for filing suit for UIM benefits should not exceed the period of time allowed to sue the person who caused the injury. Notably, in our more recent decisions in *Faeth* and *Nicodemus*, we enforced a reasonableness standard and held unenforceable contractual provisions limiting to two years an insured's right to file suit for UIM or UM under circumstances in which their enforcement would have defeated the very purpose, and nullified the essential value, of such coverage.

The majority finds a UIM policy provision matching the limitation periods for suing the party who caused the injury and the insurance carrier providing the UIM coverage reasonable as a matter of law. Their attempt to justify synchronicity of the statutory limitation for filing suits based on tort law with the limitations period for suits based on contract law discounts the legislature's choice to allow two years for tort suits and ten years for suits based on written contracts. *Compare* Iowa Code § 614.1(2) (allowing two years from the date of injury to file tort suits), *with id.* § 614.1(5) (allowing ten years to file suit for breach of a written contract). Robinson's tort claim against the other driver for personal injuries and her contract claim against Allied for UIM benefits are based on different conduct and discrete legal relationships. Because the claims are distinctly different, there is no compelling reason supporting the majority's conclusion that suits to enforce them should, as a matter of law, be brought within the same time periods.

All Robinson needed to know during the two years after the car crash in order to file suit against the person who caused the injury is that she was injured in some way. She had that knowledge and complied with the statutory time limit for filing suit within two years after she was hurt. Robinson's UIM rights against Allied are based upon a completely different civil law framework—the law of contract. *Hamm*, 612 N.W.2d at 779. The purpose of the UIM coverage is to finish the "clean-up" of a mess caused by a financially irresponsible person. In order to know she had a UIM claim against Allied within two years after her car crash, Robinson must have known she had been injured severely enough that her damages could exceed the liability coverage limit of the person who caused the injury. Put another way, she needed to know or at least have reason to know the size of the mess created by the crash. The fundamental need of an insured for such knowledge as a prerequisite for filing suit for UIM benefits was the foundation of our pronouncement in *Nicodemus* that "[a] contractual limitations provision that would require a plaintiff ' "to bring his action before his loss or damage can be ascertained" ' is per se unreasonable." *Nicodemus*, 612 N.W.2d at 787 (quoting *Douglass*, 508 N.W.2d at 666). We have not made such a statement with respect to the limitation period controlling tort actions because they are fundamentally different than UIM actions.

While it arguably makes sense to require a plaintiff who knows she has been injured to some extent in a motor vehicle crash to file suit for damages within two years against a person who caused the injury, a provision narrowing to two years the time for filing suit for UIM benefits can be very problematic for policyholders. The facts of this case illustrate it is sometimes impossible for an insured to comprehend within two years after an injury the extent of "the mess" left by the person who

caused the personal injury and resulting damages. Although the majority's opinion in this case presents with great care the perspective of the insurance company who seeks to narrow just as far as the law will allow its window of exposure to pay benefits to its policyholder, I think it ignores both the purpose of UIM coverage and the insured's interest in receiving the protection she reasonably expected for the premiums she paid. We have clearly stated that " '[t]he goal of underinsured motorist coverage . . . is *full* compensation to the victim to the extent of the injuries suffered.' " *Hamm*, 612 N.W.2d at 779 (quoting *Veach v. Farmers Ins. Co.*, 460 N.W.2d 845, 848 (Iowa 1990)) (characterizing this as the "broad coverage view" of UIM coverage).

I reject the majority's suggestion that Robinson's view of the reasonableness standard could leave her better off than she would have been had the other driver been fully insured. Utilizing a strained hypothetical assuming facts not present in Robinson's case, the majority posits a scenario in which she settled her case against the other driver for twenty percent of the applicable liability limits and later sued Allied for underinsurance benefits. In fact, Robinson actually recovered the full liability insurance limits of the other driver because she prudently waited to settle her claim until she knew how badly she was hurt. If she were now allowed, as I think she should be, a UIM recovery against Allied she would clearly not be better off than she would have been if the other driver had been fully insured. She will merely get what she is entitled to under the policy if she proves her total damages exceed $100,000.

The majority's opinion speculates that the enforcement of the reasonableness standard would cause an increase in the cost of insurance. Although there is no evidence supporting this assertion in the record of this case, I will assume its truth for the sake of discussion.

Should we suppose Iowans would prefer to pay a low premium for UIM coverage that provides no protection under circumstances such as Robinson faced in this case? Or should we believe they would prefer to pay a fair premium for real protection against an injury caused by a financially irresponsible person? In my view, the answer is clear. Iowans would prefer to pay a fair premium for insurance protection that is real rather than illusory. Notwithstanding the majority's assertion to the contrary, the limitation periods for filing suit to enforce a UIM claim will not be dictated by the laws of basic economics or market forces directed by consumer choices, because consumers are not routinely given a choice regarding that term of a UIM contract. It will instead be dictated by insurers motivated to shorten the length of their obligation to pay claims.

I also believe the majority's decision will cause greater inefficiency in our civil justice system by forcing some policyholders to sue their insurance companies for UIM benefits before they have reason to believe their damages will exceed the liability insurance coverage limit of the person who caused the injury. The court's decision in this case will lead some people to file suit against their insurance company for UIM benefits within two years after they are injured and before they have a factual basis for doing so just to be sure they will be protected if their seemingly minor injuries later prove unexpectedly to be worse. This will result in the filing of unnecessary lawsuits tending to increase the costs of litigation and waste precious judicial branch resources, as well as raise serious ethical considerations for attorneys. *See* Iowa R. Civ. P. 1.413 ("Counsel's signature to every . . . pleading . . . shall be deemed a certificate that: . . . to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is

warranted by existing law."); Iowa R. Prof'l Conduct 32:3.1 ("A lawyer shall not bring . . . a proceeding . . . unless there is a basis in law and fact for doing so that is not frivolous . . . ."); Iowa Lawyer's Oath ("As a zealous advocate and counselor for my client, I will . . . [c]ounsel clients to maintain only those disputes supported by law and the legal process.").  The rule adopted by the majority will in some cases place an insured's attorney in a no-win situation:  risk violating one's ethical obligations as an officer of the court by bringing a frivolous lawsuit against an insurance company for UIM benefits, or risk committing malpractice for failing to file a suit for which a factual basis might exist sometime in the future.  The majority's decision in this case would have required Robinson's attorney to file what would have appeared to a reasonable person to be a frivolous lawsuit against Allied for underinsured motorist benefits when Robinson's damages amounted to a small fraction of the other motorist's liability insurance coverage limit. "The law does not favor bringing litigation . . . when the claim has yet no basis in fact or law," *Worley v. Ohio Mut. Ins. Ass'n*, 602 N.E.2d 416, 419 (Ohio Ct. App. 1991), and we should not condone as reasonable an interpretation of a contract that would require such conduct.  Although the majority correctly observes that Iowa lawyers often file tort and UIM suits at the same time, we should not force them to do so when there is no factual basis for a UIM claim.  Accordingly, the majority's conclusion that Robinson should have filed her action against Allied when she sued the tortfeasor simply misses the mark.

The majority favors the approach taken by the Illinois Court of Appeals in *Parish v. Country Mutual Insurance Co.*, 814 N.E.2d 166 (Ill. App. Ct. 2004).  Unburdened by the reasonableness constraint adopted by our court years ago and applied in *Faeth* and *Nicodemus*, the Illinois

court ignored the distinction between the factual basis for a claim against the party who caused the injury and the factual basis required for suit on a UIM claim. *Parish*, 814 N.E.2d at 169. Although we are justifiably cautious in the imposition of public policy-based limitations on the freedom to contract, we mounted that "unruly horse" years ago, and I believe we tamed it in *Faeth* and *Nicodemus*. I see no principled reason to emulate the Illinois court's exemption of counsel handling a UIM claim from the requirement of a good faith factual and legal basis dictated by our rule 1.413. *See id.* at 170. We should never encourage frivolous lawsuits, especially in this time of scarce judicial resources.

I also find unconvincing the majority's argument that Robinson should have requested a waiver of the two-year limitation provision to secure the UIM protection she purchased with her premium payments. This argument carries the same baggage as the argument that Robinson should have sued Allied within two years after the injury. Both arguments are plausible only if Robinson knew or reasonably should have known within two years that her damages might exceed the negligent motorist's liability coverage limit. As the record demonstrates Robinson was not armed with such knowledge within two years of her injury, the applicable reasonableness standard did not require her to take either course of action.

For these reasons, I respectfully dissent. I would reverse the district court's ruling and would remand this case for trial.

Wiggins and Appel, JJ., join this dissent.