Lynn FAETH, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

No. 03–1552.

Supreme Court of Iowa.

Dec. 23, 2005.

Nicholas G. Pothitakis of Pothitakis Law Firm, P.C., Burlington, for appellant.

Matthew J. Nagle and Corinne R. Butkowski of Lynch Dallas, P.C., Cedar Rapids, for appellee.

CARTER, Justice.

Plaintiff, Lynn Faeth, who was injured in a motor vehicle collision involving Umthun Trucking Company (Umthun), a self-insured motor carrier that later became insolvent, appeals from the denial of his motion for summary judgment against defendant, State Farm Mutual Automobile Insurance Company (State Farm), on a claim made under the uninsured-motorist coverage provided to Faeth by State Farm. State Farm cross-appeals from the denial of its motion for summary judgment. The appeals concern the efficacy of a contractual limitation on the time for bringing suit contained in the State Farm policy. The policy provision at issue requires that actions to recover on uninsured-motor-vehicle coverage must be commenced within two years of the date of the accident.

After reviewing the record and considering the arguments presented, we find that the mandatory protection against uninsured motorists contained in Iowa Code section 516A.1 (1997) extends to legally sanctioned, self-insured motorists who become insolvent after the accident occurs. An uninsured-motorist claim in that situation does not accrue until the occurrence of the insolvency. Because the application of the contractual limitation on time to sue contained in State Farm's policy would serve to extinguish Faeth's uninsured-motorist claim before it accrued, it is unreasonable and may not be enforced. By default, Iowa Code section 614.1(5) becomes the applicable period of limitation. As a result of these conclusions, we reverse the district court on Faeth's appeal and affirm the district court on State Farm's appeal.

Faeth was injured on November 15, 1997, when the motor vehicle he was driving was rear-ended by a truck owned by Umthun and operated by its driver, Danyiel L. Simmons. On November 4, 1999, Faeth filed an action against Umthun and Simmons in the State of Illinois, seeking to recover for the injuries he had sustained in the November 15, 1997 collision. On the date of the collision, Umthun was self-insured under the authority of the United States Department of Transportation for the first $300,000 of liability incurred on bodily injury claims. However, on February 28, 2002, Umthun became insolvent. It was thereafter unable to make payments on claims made against it during its self-insured status. Subsequently, Faeth, on September 25, 2002, brought this action for uninsured-motorist benefits against State Farm.[1]

---

1. On October 15, 2002, Faeth recovered a default judgment in the amount of $456,986

against Umthun and Simmons in the Illinois litigation. We express no opinion concerning

## I. *The Summary Judgment Rulings.*

The first motion for summary judgment was filed by State Farm. The motion asserted that the action was barred by the limitations on the time to sue contained in its policy. The policy provision in question provides:

**Suit Against Us**

There is no right of action against us:

. . . .

d. under uninsured motor vehicle coverage unless such action is commenced within two years after the date of the accident.

The district court denied State Farm's motion for summary judgment, stating, in part:

The Plaintiff [Faeth] rightly argues that if the suit had been brought within two years from the date of the accident, the claim for uninsured motorist benefits would have been denied because Umthun was not uninsured during that period.

. . . .

Reasonable limitations on an uninsured motorist policy must take into consideration the practical application of how that benefit is to be realized.

The second motion for summary judgment was filed by Faeth and was considered by a different judge. In denying Faeth's motion, the judge concluded that the contractual limitation on the time to sue was clear and unambiguous and required an uninsured-motorist claim to be brought within two years of the accident. The court also ruled that State Farm's uninsured-motorist coverage did not apply to claims against self-insured motor vehicles in any event.

the preclusive effect of that judgment with respect to the present claim against State

Because the second summary judgment ruling involved a motion filed by Faeth, the district court concluded that the ruling denying the motion could not include a dismissal of the action. Because the two inconsistent rulings on summary judgment motions left the case in an interlocutory impasse, this court granted the parties permission to appeal in advance of final judgment.

## II. *Standard of Review.*

 Summary judgment rulings are reviewed for correction of errors at law. *Kiesau v. Bantz,* 686 N.W.2d 164, 171 (Iowa 2004). Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). Further considerations when reviewing a motion for summary judgment are summarized as follows:

"A factual issue is material only if the dispute is over facts that might affect the outcome of the suit. The burden is on the party moving for summary judgment to prove the facts are undisputed. In ruling on a summary judgment motion, the court must look at the facts in a light most favorable to the party resisting the motion. The court must also consider on behalf of the nonmoving party every legitimate inference that can be reasonably deduced from the record."

*Estate of Harris v. Papa John's Pizza,* 679 N.W.2d 673, 677 (Iowa 2004) (quoting *Phillips v. Covenant Clinic,* 625 N.W.2d 714, 717–18 (Iowa 2001)).

## III. *Whether Uninsured–Motorist Protection Extends to Claims Against Self–Insured Entities.*

 Prior to determining the issues involving the application of the contractual

Farm.

period of limitations, we consider the district court's conclusion on Faeth's motion for summary judgment that under State Farm's policy uninsured-motorist coverage did not apply to claims against self-insured motor vehicles in any event. The provision on which the court relied for this conclusion was:

> An **uninsured motor vehicle** does not include a land motor vehicle:
>
> . . . .
>
> 2. owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier or any similar law. . . .

■ Faeth argues that this policy provision is only intended to make it clear that those motor vehicle operators who enjoy a legally sanctioned, self-insured status are not to be considered as uninsured. We agree with Faeth's interpretation of the policy provision involving self-insurers. However, as recognized by a New Jersey court in interpreting a similar provision, policy provisions removing legally sanctioned self-insurers from uninsured status for purposes of uninsured-motorist coverage only apply to solvent self-insured entities. *Goodwin v. Rutgers Cas. Ins. Co.,* 223 N.J.Super. 195, 538 A.2d 425, 427 (1988).

The court in *Goodwin* described the situation as follows:

> An effective self-insurer must be an entity which can pay claims in the usual course, not an empty or shallow pocket left to personal injury claimants who are reduced to general creditors' status awaiting payment from the debtor's estate after liquidation or reorganization proceedings are finally concluded.

*Id.* The district court was wrong in concluding that the policy provision excepting a legally sanctioned, self-insured entity from the status of an uninsured motorist applies to self-insurers who have become insolvent.

If the provision in State Farm's policy excluding self-insurers from being considered as uninsured motorists were to be applied to insolvent self-insurers, the policy would not provide the coverage mandated by Iowa Code section 516A.1. As recognized by the New Jersey court in *Goodwin:*

> The instruction of that provision is that an authorized and financially responsible self-insurer is not to be deemed "uninsured." Such a self-insurer has provided an acceptable equivalent of liability insurance. An insolvent self-insurer is neither insured nor financially responsible. There is no reason to conclude that the statute permits a person injured by such an owner to be deprived of UM coverage.

538 A.2d at 427.

**IV.** *Whether Self–Insurers Who Become Insolvent After the Accident Are Considered in the Same Manner as Conventional Liability Insurers Under Iowa Code Section 516A.3.*

■ Although the application of State Farm's time limit on bringing suit in cases involving conventional liability insurers is not before us, it is nevertheless necessary to consider that matter in deciding Umthun's situation. Had Umthun been insured by a conventional liability insurer at the time of the accident and that insurer had become insolvent at a time subsequent to the accident, Iowa Code section 516A.3 would provide that those claiming against Umthun for motor-vehicle negligence would be confronting an uninsured motorist, thus triggering any UM coverage that

they might have.[2] In the present case, we must decide whether the postaccident insolvency of a legally sanctioned self-insurer triggers the same result. We are convinced that it does.

The financial liability coverage recognized under Iowa Code section 321.20B(1) (as defined in Iowa Code section 321.1(24B)) includes both insurance policies issued by carriers licensed to do business in Iowa and a valid certificate of sanctioned self-insurance. To be a sanctioned self-insurer, a motor carrier must satisfy the Iowa Department of Transportation that it has and will continue to have the ability to pay judgments arising out of the ownership or operation of a motor vehicle in this state. Iowa Code § 321A.34. For interstate carriers such as Umthun, Iowa authorities accept the determination of federal regulators as to the carrier's self-insured status pursuant to 49 U.S.C. § 13906(d) and 49 C.F.R. § 387.3. Iowa Admin. Code r. 761–524.7(2).

As a result of this statutory scheme, we conclude that Umthun was the equivalent of an insured motorist at the time of the collision of its vehicle with Faeth's vehicle. Conversely, when it became insolvent on February 28, 2002, it then became an uninsured motor vehicle, as that term is contemplated in section 516A.1. Consequently, irrespective of any interpretation that might be placed on the language contained in State Farm's policy, a failure to provide uninsured-motorist coverage to Faeth as a result of Umthun's insolvency would amount to a noncompliance with the statutory mandate to provide insurance against "an uninsured motor vehicle."

State Farm argues that a determination that Umthun was an uninsured motorist would violate the rule of statutory interpretation that equates an express mention of one thing with the implied exclusion of other things. Based on this premise, State Farm urges that, because section 516A.3 only mentions insolvency proceedings instituted against a "liability insurer," the legislature had no intention of also designating self-insured entities who become insolvent subsequent to the accident as uninsured motorists for purposes of section 516A.1.

In interpreting statutes, we often do apply the rule that an express mention of one thing implies the exclusion of other things. *See, e.g., Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.*, 650 N.W.2d 609, 618 (Iowa 2002); *State v. Beach*, 630 N.W.2d 598, 600 (Iowa 2001). However, we have recognized that this rule of interpretation is subordinate to the primary search for the intention of the legislature. *State v. Carpenter*, 616 N.W.2d 540, 543 (Iowa 2000). In our search for legislative intent, we consider the objects sought to be accomplished and the evils and mischief sought to be remedied and seek a result that will advance rather than defeat the statute's purpose. *Harris v. Olson*, 558 N.W.2d 408, 410 (Iowa 1997); *Doe v. Ray*, 251 N.W.2d 496, 500 (Iowa 1977). The result should not depend on dogmatic terms of expression.

---

2. The material portions of this statute provide:

> [T]he term *"uninsured motor vehicle"* shall, subject to the terms and conditions of the coverage herein required, be deemed to include an insured motor vehicle with respect to which insolvency proceedings have been instituted against the liability insurer thereof . . . .

Prior to 1991, the statute only included liability insurers who became insolvent within one year following the accident. 1967 Iowa Acts ch. 374, § 3. That time limitation was removed by a 1991 amendment. 1991 Iowa Acts ch. 26, § 46.

*State ex rel. Winterfield v. Hardin County Rural Elec. Coop.*, 226 Iowa 896, 899, 285 N.W. 219, 229 (1939). In invoking this approach to statutory interpretation, we reaffirm the statement that this court made in *Rodman v. State Farm Mutual Automobile Insurance Co.*, 208 N.W.2d 903 (Iowa 1973), with respect to the purpose of uninsured-motorist insurance protection:

> It is plain the legislature intended to assure protection to an insured against motorists whose liability to the insured is not covered. Under the uninsured motorist statute we believe an automobile or motor vehicle liability policy must protect the insured in any case to the same extent as if the tortfeasor had carried liability insurance covering his liability to the insured in the amounts required to establish financial responsibility.

*Rodman*, 208 N.W.2d at 909. In keeping with this purpose, we conclude that Umthun is an uninsured motorist within the meaning of section 516A.1, thus triggering State Farm's uninsured-motorist protection for Faeth's benefit.

## V. *The Contractual Limitation on Time for Bringing Suit.*

▆▆▆▆ We now move to the issue involving the policy provision requiring that an uninsured-motorist claim be brought within two years of the accident. We have recognized the validity of contractual limitations on the time for bringing suit against an insurer. *Douglass v. Am. Family Mut. Ins. Co.*, 508 N.W.2d 665, 667 (Iowa 1993). In order to be enforced, such provisions must be reasonable. *Nicode-*

*mus v. Milwaukee Mut. Ins. Co.*, 612 N.W.2d 785, 787 (Iowa 2000). In *Douglass* we upheld a contractual period of limitation which provided that the insurer could not be sued under uninsured-motorist coverage on any claim barred by the tort statute of limitations. We interpreted that clause to refer to the personal-injury statute of limitations contained in Iowa Code section 614.1(2) and, based on the assumption that the claim accrued on the date of the accident, found that limiting the time to sue to a period of two years following the accident was not unreasonable. *Douglass*, 508 N.W.2d at 666–67.[3]

In *Nicodemus* we dealt with a statutory limitation on the time to sue on an underinsured-motorist claim. The statutory provision required suit to be brought within two years of the accident. We held that limitation was unreasonable because conditions precedent to suit imposed by the policy could force the claimant to delay bringing the underinsured-motorist claim until after the contractual period of limitation had expired. *Nicodemus*, 612 N.W.2d at 787–88. As a result, we declared the contractual limitation on time to sue invalid and, by default, imposed the statutory period of limitations contained in Iowa Code section 614.1(5). *Id.* at 789.

▆▆▆ Because we have concluded that the insurance protection to be accorded those who claim against uninsured motor vehicles under section 516A.1 extends to sanctioned, self-insured vehicles that become insolvent subsequent to the accident, those claimants must be given some reasonable time after the insolvency occurs within which to bring suit to enforce their

---

**3.** In the later case of *Hamm v. Allied Mutual Insurance Co.*, 612 N.W.2d 775, 784 (Iowa 2000), we determined that we had erroneously interpreted the policy provision in *Douglass* as stating a reduced statute of limitations for bringing an uninsured-motorist claim when in fact it merely imposed a condition precedent to suit. Our decision in *Hamm* did not affect our holding in *Douglass* that an insurer may reasonably reduce the ten-year statutory limitations period for contractual claims to a two-year period for filing suit against the insurer.

uninsured motorist coverage. The two-year limitation from the date of the accident contained in State Farm's policy left Faeth with no time to sue following the accrual of his claim. In dealing with a similar situation, the Ohio Supreme Court observed

> a provision in a contract of insurance which purports to extinguish a claim for uninsured motorist coverage by establishing a limitations period which expires before or shortly after the accrual of the right of action for such coverage is *per se* unreasonable and violative of the public policy of the state of Ohio . . . .

*Kraly v. Vannewkirk,* 69 Ohio St.3d 627, 635 N.E.2d 323, 329 (1994). We agree with the observation of the Ohio court, and as applied here, the limitation contained in the State Farm policy is clearly unreasonable as applied to Faeth's claim. We hold

that the contractual period of limitation is invalid, and by default, we impose the statutory period of limitations contained in Iowa Code section 614.1(5).

We have considered all issues presented and conclude that the district court's ruling on Faeth's motion for summary judgment is reversed.[4] The district court's ruling on State Farm's motion for summary judgment is affirmed. Costs of appeal are assessed against State Farm.

**REVERSED ON PLAINTIFF'S APPEAL; AFFIRMED ON DEFENDANT'S APPEAL.**

4. The effect of our reversal is to establish that Umthun was an uninsured motorist for purposes of triggering the UM coverage in the State Farm policy. We do not determine if Faeth was legally entitled to collect damages from Umthun or, if so, in what amount.