WATERMAN, Justice.
In this appeal, we must decide whether to judicially invalidate an insurance contract requirement that the insured file her lawsuit for underinsured motorist coverage (UIM) within two years of her auto accident. Plaintiff, Karen Robinson, argues the deadline is unenforceable because, although she was still experiencing pain two years after the accident, only later did she discover the full extent of her injuries and realize her claim exceeded the other driver’s liability limits. She filed this UIM action against her insurer, defendant, Allied Property and Casualty Insurance Company, nearly six years after the accident. The district court granted Allied’s motion for summary judgment enforcing the contractual deadline as reasonable. The court of appeals reversed, holding the two-year limitation period “was unreasonable under these circumstances.” We granted Allied’s application for further review.
We hold this two-year UIM insurance policy deadline is enforceable as a matter *400 of law because it matches the two-year statute of limitations in Iowa Code section 614.1(2) (2009) for personal injury actions. The Iowa legislature chose that statutory deadline for lawsuits alleging personal injuries, and we decline to invalidate the same limitations period as unreasonable in a contract for UIM coverage. In both situations, the injured party must file suit within two years even if the full extent of the injury is not reasonably discovered until later.
I. Background Facts and Proceedings.
On June 15, 2004, Karen Robinson injured her neck in a car crash caused by another driver insured by State Farm with $100,000 liability policy limits. At the time of the accident, Robinson carried an un-derinsured motorist policy with Allied with a $50,000 limit. The Allied policy provided:
No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form. Further, any suit against us under this Coverage Form will be barred unless commenced within two years after the date of the accident.
(Emphasis added.)
Paramedics took Robinson by ambulance to a hospital for treatment of her injuries, and she was not released until the next day. She was instructed to follow up with her family physician, Dr. Johnson. He diagnosed a neck sprain and strain and prescribed a regimen of physical therapy and anti-inflammatories. In October, Dr. Johnson noted Robinson was continuing to have neck pain and numbness in her arms and hands. He recommended a nerve-conduction study, which was interpreted as normal. In December, Dr. Johnson noted the physical therapy was not helping Robinson and that she “did not have improvement of any significance” and “[cjontinued to have quite limited [range of motion] and pain with movement.” A second nerve-conduction study conducted on December 29 again failed to document a physical abnormality.
In January 2005, although Robinson was still experiencing discomfort, Dr. Johnson released her from his care for the injuries sustained in her accident. In a report authored in March 2005, Dr. Johnson stated: “I think as time progresses, the soft tissue injury will gradually repair itself. It is not going to be an overnight type resolution.” He predicted “no possible complications or negative secondary effects” and did not anticipate any additional procedures or treatments. “It is my opinion,” Dr. Johnson wrote, “that there will be no restrictions upon Ms. Robinson and it is my opinion that this will gradually improve with time although it will probably be a long time.”
On August 1, Robinson’s attorney opened settlement discussions with State Farm, the insurance carrier for the driver who caused the accident. Based upon Dr. Johnson’s prognosis and her medical expenses of $5111, her initial settlement demand was for $40,000, well within State Farm’s $100,000 limits. State Farm made a counteroffer to settle for $7000. Robinson subsequently reduced her settlement demand to $30,000 and then $20,000 before negotiations with State Farm broke down. She filed suit against State Farm’s insured on October 27, 2005, with more than eight months remaining in the two-year limitations period.
Meanwhile, Robinson had returned to Dr. Johnson the preceding month because of continuing neck pain. She underwent a cervical MRI on September 10, 2005. After Robinson’s MRI study reported a normal cervical spine, she consulted a pain specialist who administered cervical facet *401 joint injections in November and December of 2005. The injections provided temporary pain relief for a few weeks each time, but her pain returned.
As the two-year anniversary of her car accident approached, her neck and back pain persisted, and her pending tort action against State Farm’s insured was nowhere close to settlement. In the first six months of 2006, Robinson continued to see Dr. Johnson occasionally with complaints of neck and back pain. Robinson’s attorney did not file a UIM action or ask Allied to suspend the June 4, 2006 deadline through a tolling agreement, and that contractual deadline expired.
In November 2006, two years and three months after the accident, Robinson underwent an MRI of her lumbar spine, which indicated a mild central bulge in L4-5. A month later, an x-ray of her cervical spine indicated mild C6-7 degenerative disc changes. She began physical therapy in late December. Although the therapy provided some relief, she continued to experience pain. In February 2007, Robinson was examined by a surgeon, Dr. Jensen, who for the first time proposed a surgical option for Robinson’s condition. Dr. Jensen performed an anterior cervical interbody discectomy on April 7, 2007. The surgery was successful, and Robinson experienced significant improvement.
Dr. Jensen authored a report in July 2007 stating Robinson’s “[cjurrent prognosis is guarded. She may well harbor a permanent degree of paracervical pain as a result of her injury.” He estimated future medical expenses in the range of $5000 to $10,000 and predicted that Robinson will have permanent activity restrictions.
At the end of July 2008, State Farm offered its policy limit of $100,000 to settle Robinson’s claim. Robinson promptly notified Allied of this development and also offered to settle her UIM claim against Allied for $50,000, the policy limit. On August 13, Allied denied her UIM claim as untimely based on the two-year limitation contained in Robinson’s insurance contract. On August 28, Robinson accepted State Farm’s policy limits settlement.
Robinson waited over another twenty-one months to file this UIM action against Allied on May 13, 2010, nearly six years after her auto accident. Allied moved for summary judgment on grounds the two-year deadline in its UIM policy had expired. Robinson resisted, arguing the deadline was unreasonable because she was unable to ascertain her damages within two years of her accident. The district court ruled the two-year provision was reasonable and entered summary judgment for Allied because the UIM claim was untimely. Robinson appealed, and the court of appeals reversed the summary judgment, concluding the two-year limitation was unreasonable under the circumstances because Robinson was not “able to ascertain her damages” within that period. We granted Allied’s application for further review.
II. Scope of Review.
We review a district court’s grant of summary judgment for errors at law. Nicodemus v. Milwaukee Mut. Ins. Co., 612 N.W.2d 785, 786 (Iowa 2000); Iowa R.App. P. 6.907. We view the evidence in the light most favorable to the nonmoving party. Faeth v. State Farm Mut. Auto. Ins. Co., 707 N.W.2d 328, 331 (Iowa 2005). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.; Iowa R. Civ. P. 1.981(3).
In this case, the facts relevant to the limitations issue are undisputed, so the enforceability of the contractual limitations period is a question of law for the court. Nicodemus, 612 N.W.2d at 787. We will *402 decide if “the district court correctly applied the law to the undisputed facts in deciding that [Allied] was entitled to summary judgment.” Id.
III. Analysis.
Iowa law requires insurers to include UIM coverage in motor vehicle liability insurance policies unless rejected by the insured. Iowa Code § 516A.1. A UIM claim is contractual and therefore subject to the ten-year statute of limitations for written contracts. See Douglass v. Am. Family Mut. Ins. Co., 508 N.W.2d 665, 666 (Iowa 1998) (citing Iowa Code section 614.1(5) (1991)), overruled on other grounds by Hamm v. Allied Mut. Ins. Co., 612 N.W.2d 775, 784 (Iowa 2000). However, as we noted in Douglass, “[u]n-der general contract law, it is clear that the parties may agree to a modification of statutory time limitations.” Id. We emphasized that “Iowa has long recognized the rights of insurers to limit time for claims, irrespective of a legislative imprimatur on such provisions.” Id. at 667. In that case, we surveyed the authorities to conclude that the contractual deadline must allow the insured a reasonable period to sue for the policy benefits. Id. at 666-68.
We specifically held in Douglass “that the two-year limitation provided by the policy was valid and enforceable.” Id. at 668. We enforced that deadline even though the insured “was not aware that the tortfeasors were judgment proof until the two years had passed.” Id. at 667. We affirmed the summary judgment in favor of the insurer dismissing the insured’s claim for uninsured motorist (UM) coverage filed more than two years after the accident. Id. at 668. We reasoned that the two-year contractual limitation period matched the two-year statute of limitations for a personal injury action against the tortfeasor. Id. at 667 (“An uninsured motorist provision that allows two years to sue, therefore, grants as many rights as the plaintiff would have in the case of an insured tortfeasor.”). We recently reiterated that “an insurer may reasonably reduce the ten-year statutory limitations period for contractual claims to a two-year period for filing suit against the insurer.” Faeth, 707 N.W.2d at 334 n. 3.
Robinson argues the two-year contractual deadline in her Allied policy is unreasonable under the circumstances because she could not have known the extent of her injuries within that deadline. She relies primarily on Faeth and Nicodemus, which invalidated as unreasonable contractual deadlines for UIM claims under different circumstances. The district court, in a well-reasoned, ten-page ruling concluded:
While Ms. Robinson may have had to file suit before she realized the full extent of her damages, none of the Iowa cases dealing with the present issue have held that it is unreasonable to require an insured to sue before all components of damages are actually realized. Even the discovery rule does not permit such delay.
Accordingly, the district court granted Allied’s motion for summary judgment because Robinson failed to file her UIM claim within the two years allowed by her policy.
A three-judge panel of the court of appeals viewed Iowa law differently. The panel concluded the reasonableness of a contractual limitations period is determined in light of the circumstances of the particular case. The appellate panel concluded Robinson was unable to ascertain that her damages exceeded the tortfeasor’s liability limits before her surgery the third year following the accident. The panel determined the two-year contractual deadline was unreasonable under these circumstances.
We have not previously invalidated a two-year contractual UIM deadline on *403 grounds the insured did not reasonably discover the full extent of her injuries until later. We decline to do so here for the reasons that follow.
A. Robinson’s Reliance on Faeth and Nicodemus. In Faeth and Nicodemus, we invalidated contractual deadlines as unreasonable on grounds inapplicable here. In Faeth, the plaintiff was injured when his vehicle was rear-ended by a truck owned by Umthun Trucking Company and operated by its employee. 707 N.W.2d at 330. Umthun was self-insured for liability under the authority of the United States Department of Transportation. Id. Plaintiff timely sued Umthun in tort within two years of the accident. Id. Umthun became insolvent over four years after the accident. We held “the postaccident insolvency of a legally sanctioned self-insurer” triggered the statutory right to uninsured motorists benefits. Id. at 333. Faeth’s policy required UM claims to be filed within two years of the accident. Id. at 330. Significantly for present purposes, Faeth could not have filed a claim for UM benefits during the two-year contractual limitations period because Umthun was solvent and therefore deemed insured. Id. at 334-35. Under those unique circumstances, we held the two-year limitation in the policy was unreasonable as applied because it “left Faeth with no time to sue following the accrual of his claim.” Id. at 335. We noted that UM benefits are statutorily required and would be forfeited if the contractual deadline was enforced. Id. at 334-35. By contrast, Robinson had two years from her accident during which time she could have sued Allied for UIM benefits. We do not equate her lack of appreciation of the extent of her injuries to Faeth’s legal inability to bring a UM claim until the self-insured trucker became insolvent.
Nicodemus also fails to support Robinson’s position. The contractual limitations provision in that case required the insured to conclude her tort action by settlement or judgment before filing her UIM suit within two years of her accident. Nicodemus, 612 N.W.2d at 787-88. We contrasted that policy provision with the two-year statute of limitations for personal injury claims in Iowa Code section 614.1(2), noting “the legislature has deemed it appropriate to give an injured party two years simply to investigate her claim against a tortfeasor and get her lawsuit on file.” Id. at 788. Here, the Allied policy merely required Robinson to file her lawsuit within two years — she was not required to also conclude her tort claim by settlement or judgment by that deadline. The policy provision found per se unreasonable in Nicodemus was much more onerous than the tort statute of limitations. By contrast, the Allied provision simply imposed the same burden on Robinson as the legislature imposed on tort claimants — the obligation to file suit by the two-year anniversary of the accident.
Neither Nicodemus nor Faeth required a fact-intensive inquiry into when the insured knew or should have known her damages exceeded the tortfeasor’s liability limits.[1] We recognize that Faeth invalidat *404 ed the contractual limitation “as applied here.” 707 N.W.2d at 335. But, we did not have to engage in any factual analysis to reach that conclusion. The only relevant “fact” we had to consider was that Umthun became insolvent more than two years after the accident. On that basis, we declined to enforce the clause as a matter of law. Id. at 335 n. 4. Here, by contrast, we are asked to embark on an approach that would require sifting through the medical evidence to determine whether the insured had a-reasonable basis to believe her damages exceeded the tortfeasor’s policy limits. Neither Nicodemus nor Faeth requires us to invalidate Allied’s two-year deadline as unreasonable on grounds that Robinson could not ascertain the full extent of her injuries within that period.
B. A Contractual UIM Limitation Matching the Two-Year Statute of Limitations for Personal Injury Tort Claims Is Per Se Reasonable. Our legislature has determined it is reasonable to require tort claimants to file lawsuits for personal injuries within two years “after their causes accrue.” Iowa Code § 614.1(2). Importantly, the statutory limitations clock begins to run on the date of the motor vehicle accident, even for more serious injuries that first appear over two years later. LeBeau v. Dimig, 446 N.W.2d 800, 802-03 (Iowa 1989). In LeBeau, we held a lawsuit seeking recovery for epilepsy caused by car accident was time-barred under section 614.1(2), even though plaintiff thought she had only minor neck injuries until her epilepsy manifested after the two-year limitation expired. Id. Robinson’s argument that her two-year contractual limitation is unreasonable because she did not know the full extent of her injuries is at odds with the policy determination our legislature made in analogous tort cases.
'UIM actions are contract claims, but the trial requires juries to consider evidence and make findings typical of motor vehicle negligence actions, including the comparative fault of both drivers and the extent of personal injuries. Accordingly, it makes good sense for an insurer to provide for a UIM limitation period matching the two-year deadline in Iowa Code section 614.1(2) to file suit for personal injuries.
The purpose of our statutes of limitations is to spare courts the burden of adjudicating stale claims after memories have faded, witnesses have died, and evidence has been lost. This purpose explains why the limitation on an action on a written contract is longer than the limitation on an action in tort; generally, *405 the evidence surrounding a tort claim is more likely to disappear or become less reliable over time than the evidence surrounding a written contract. Cf. Matherly v. Hanson, 359 N.W.2d 450, 457 (Iowa 1984) (observing the policy reasons for a shorter limitations period on unwritten contracts than on written contracts).
Wetherbee v. Econ. Fire & Cas. Co., 508 N.W.2d 657, 662 (Iowa 1993) (McGiverin, C.J., concurring) (citation omitted). In the absence of an enforceable contractual limitations period, UIM claims are governed by the ten-year statute of limitations for written contracts. Faeth, 707 N.W.2d at 335. This would require UIM insurers to defend claims with stale evidence.
We hold it is reasonable, as a matter of law, for a UIM insurer to select the same two-year deadline from the date of the accident to file a UIM claim as the legislature prescribed for filing a personal injury tort action. See Hamm, 612 N.W.2d at 784 (“[T]he insurance company has the ability, if it so chooses, to clearly articulate the applicable limitations period for claims against the tortfeasor and the insurer, and the event upon which the limitations period begins to run.”); see also Faeth, 707 N.W.2d at 334 n. 3 (“Our decision in Hamm did not affect our holding in Douglass that an insurer may reasonably reduce the ten-year statutory limitations period for contractual claims to a two-year period for filing suits against the insurer.”). In Douglass, we upheld the two-year contractual limitation specifically because it matched the statutory deadline for filing personal injury lawsuits in section 614.1(2). 508 N.W.2d at 667. We rejected the insured’s argument the deadline was unreasonable in that case because she did not discover the tortfeasors were judgment proof until over two years after the accident. Id. Similarly, we decline to conclude Allied’s two-year deadline is unreasonable as applied to Robinson because she did not ascertain the full extent of her injuries within that time.
Our precedent is consistent with other jurisdictions that enforce UIM contractual deadlines matching the state’s statute of limitations for personal injury tort actions. The Ohio Supreme Court made clear a two-year contractual deadline to bring UIM claims is enforceable because it matches that state’s statutory deadline for filing tort claims for personal injuries:
Consistent with our analysis, a two-year period, such as that provided for bodily injury actions in R.C. 2305.10, would be a. reasonable and appropriate period of time for an insured who has suffered bodily injuries to commence an action or proceeding for payment of benefits under the uninsured or underinsured motorist provisions of an insurance policy.
Miller v. Progressive Cas. Ins. Co., 69 Ohio St.3d 619, 635 N.E.2d 317, 321 (1994). Miller held a one-year policy deadline is unreasonable because it provides the insured less protection than if the tortfeasor had been adequately insured — the same reason we invalidated the UIM limitation in Nicodemus. Id. The Miller court, however, emphasized a two-year limitations period to file a UIM claim is reasonable because it matches the time statutorily allowed to sue the tortfeasor — a deadline the legislature had deemed reasonable. Id.
Illinois appellate courts have employed a similar analysis in evaluating the enforceability of UIM contractual deadlines. See Shelton v. Country Mut. Ins. Co., 161 Ill.App.3d 652, 113 Ill.Dec. 426, 515 N.E.2d 235, 240 (1987) (noting the insurer is placed “in the boots of the tortfeasor” and the “insured ... should not be conferred with rights any different” from a claim against the tortfeasor); Coyne v. Country Mut. Ins. Co., 39 Ill.App.3d 279, 349 N.E.2d 485, 486 (1976) (“Here the contrac *406 tual provision has a two year limitation, the same amount of time plaintiffs would have had to determine financial responsibility for an accident with an insured motorist”)-[2] Thus, in Parish v. Country Mutual Insurance Co., the appellate court affirmed dismissal of the UIM claim brought by the insured who, like Robinson, did not appreciate the extent of her injuries until she had surgery over two years after the accident. 351 Ill.App.3d 693, 286 Ill.Dec. 516, 814 N.E.2d 166, 169-70 (2004).
As we said in Douglass in the context of uninsured motorist coverage:
Of course, if the plaintiff had sued a tortfeasor who did have insurance, she would have to do so within two years. An uninsured motorist provision that allows two years to sue, therefore, grants as many rights as the plaintiff would have in the case of an insured tortfeasor.
508 N.W.2d at 667 (citation omitted). We are applying the same symmetry principle here.[3] The approach advocated by Robinson, on the other hand, could result in an anomaly. Suppose Robinson’s negotiations with State Farm had not broken down and the parties had settled for $20,000 in the fall of 2005. Later, Robinson discovered her injuries were more serious than she previously thought. Clearly, she could not sue the tortfeasor again, regardless of the circumstances, because she had released her tort claim. But, could she sue Allied, giving a credit for the tortfeasor’s policy limits? Our precedents suggest she could. Waits v. United Fire & Cas. Co., 572 N.W.2d 565, 573-74 (Iowa 1997) (holding release of underinsured motorist does not bar claim for recovery of UIM benefits). This would make Robinson better off than she would have been with a fully insured tortfeasor.
C. Ethical and Practical Considerations. Robinson argues applying the two-year statutory limitation for tort claims is unreasonable because to recover on her UIM claim she must additionally allege and prove her damages exceed the tortfeasor’s $100,000 liability limits, which she was incapable of doing before Dr. Jensen performed surgery on her nearly three years after her accident. Indeed, she suggests to file a UIM action when the insured’s damages appear unlikely to exceed the underlying liability limits would risk sanctions under Iowa Rule of Civil Procedure 1.413(1) for filing frivolous pleadings. Her concern is overstated and belied by the common practice in Iowa of filing UIM claims together with tort claims against the other driver. See Barnhill v. Iowa Dist. Ct., 765 N.W.2d 267, 272 (Iowa 2009) (indicating that the standard to be used in determining the reasonableness of an attorney’s conduct for rule 1.413 purposes is that of “ ‘a reasonably competent attorney admitted to practice before the district court’ ”) (quoting Weigel v. Weigel, 467 N.W.2d 277, 281 (Iowa 1991)). We do not see this case as presenting claimants’ counsel with a Hobson’s choice between filing frivolous claims or losing what might be a meritorious UIM claim. If the UIM claim potentially has merit, no Iowa court should impose sanctions for filing it to toll the contractual deadline. Indeed, in Nicodemus, we noted “the insured could simply commence her action against the insurer at the same time she files suit against the underinsured motorist, thereby complying with the two-year limitations period governing both claims,” and we further ob *407 served that, “this course of action is certainly permissible under our UIM statute.” 612 N.W.2d at 788. We invalidated as per se unreasonable the contractual limitations period in that case that required the insured to conclude her tort claim before filing her UIM claim within two years of the accident. Id. at 789.
Our state’s trial bar has a long-standing custom and practice of filing UIM claims together with the tort action against the driver. The UIM claim is typically stayed with the UIM insurer to be bound by the verdict in the underlying tort action. See Wilson v. Farm Bureau Mut. Ins. Co., 714 N.W.2d 250, 262 (Iowa 2006) (recognizing UIM insurer bound by original judgment on jury verdict in tort action); Handley v. Farm Bureau Mut. Ins. Co., 467 N.W.2d 247, 249-50 (Iowa 1991) (addressing bifurcation).
Attorneys facing a contractual deadline should assume the UIM action will be barred once the contractual deadline expires and should act to protect the client’s interests. We could find no case sanctioning an attorney for a frivolous pleading filed to preserve a UIM claim on the eve of a deadline. The reasonable course of action is simply for the plaintiffs counsel to request a tolling agreement from the UIM insurer, which in all likelihood would be forthcoming. If the UIM insurer balks, the attorney reasonably can file the UIM claim without violating Iowa Rule of Civil Procedure 1.413 or Iowa Court Rule 32:3.1. The future course of a person’s medical condition — especially a neck injury as here — is inherently open to some doubt. An attorney who has made a reasonable inquiry and has not received a definitive determination that the client’s damages will be within the tortfeasor’s policy limits does not violate either rule by bringing a precautionary action against the UIM carrier. The district court would have discretion to stay the UIM claim pending resolution of the underlying tort action or to permit the case to proceed to trial, as many Iowa personal injury actions do while the plaintiff continues medical treatment. UIM insurers do not like to incur avoidable defense costs any more than plaintiffs attorneys like to prosecute UIM claims expected to be resolved within the tortfeasor’s policy limits. Both sides will be motivated to agree to toll the UIM contractual statute of limitations under the circumstances of this case.[4]
Illinois courts have been down this road repeatedly. The Parish court’s analysis addresses the practical concerns raised by Robinson as follows:
“[T]he insured can sufficiently allege a cause of action for UIM motorist benefits if she has sufficient facts to proceed against the tortfeasor. The only additional allegations required are that the insured’s damages and UM-UIM coverage exceed the tortfeasor’s liability insurance. Insurance companies that utilize suit limitation provisions must expect to be subjected to lawsuits which allege the likelihood of liability *408 under the UM-UIM coverage. Of course, the insurance company can avoid the lawsuit by agreeing with the insured to put the UM-UIM issue on hold until the resolution of the action against the tortfeasor. As a practical matter, this is an insurance company’s probable (and most reasonable) course of action.”
286 Ill.Dec. 516, 814 N.E.2d at 169-70 (quoting Vansickle v. Country Mut. Ins. Co., 272 Ill.App.3d 841, 209 Ill.Dec. 528, 651 N.E.2d 706, 707 (1995)).
If we were to adopt Robinson’s position, insurance underwriters would have to assume going forward when setting UIM rates in Iowa that two-year contractual limitation periods would be unenforceable whenever the insured can argue he reasonably did not realize his claim would exceed the underlying liability limits. Such fact-sensitive inquiries are poorly suited for summary judgment and will increase the cost of litigation. More insureds will be able to sue their UIM insurer ten years after the accident after avoiding shorter limitations periods in the insurance contract. This would inject uncertainty into our contract law by invalidating a bright-line, unambiguous, and reasonable contractual deadline to file UIM claims within two years of the accident. It is easy to foresee the result will be to increase auto insurance rates for Iowans.[5]
D. Freedom of Contract. We should be reluctant to interfere with the freedom of contract under these circumstances. As the Vansickle court recognized, “[insurance companies are entitled to reasonably limit their exposure from an insurance contract.” 209 Ill.Dec. 528, 651 N.E.2d at 707. To declare a contractual deadline for UM or UIM claims unenforceable “is an extraordinary remedy, and we find it unpalatable.” Id. Our own precedent reflects our traditional caution when asked to invalidate contract provisions. “[Tjhere is a certain danger in too freely invalidating private contracts on the basis of public policy. This concern is especially valid in the area of insurance contracts .... ” Skyline Harvestore Sys., Inc. v. Centennial Ins. Co., 331 N.W.2d 106, 109 (Iowa 1983). To do so “‘is to mount “a very unruly horse, and when you once get astride it, you never know where it will carry you.” ’ ” Grinnell Mut. Reins. Co. v. Jungling, 654 N.W.2d 530, 540 (Iowa 2002) (quoting Skyline Harvestore Sys., 331 N.W.2d at 109).[6]
*409 We decline Robinson’s invitation to mount the “unruly horse.”
IV. Disposition.
For these reasons, we determine that the contractual deadline requiring Robinson to file her UIM claim within two years of her accident is reasonable and enforceable as a matter of law. Accordingly, we vacate the court of appeals decision and affirm the district court’s summary judgment in favor of Allied.
DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT SUMMARY JUDGMENT AFFIRMED.
All justices concur except HECHT, WIGGINS, and APPEL, JJ„ who dissent.

. After Faeth, we reiterated the well-settled tenet of contract interpretation that "whether an agreement is unconscionable must be determined at the time it was entered.” C & J Vantage Leasing Co. v. Wolfe, 795 N.W.2d 65, 81 (Iowa 2011) (citing Casey v. Lupkes, 286 N.W.2d 204, 208 (Iowa 1979)). That is the categorical approach we follow today. The Nicodemus court quoted part of a sentence from a 1963 treatise that "[t]he reasonableness of a contractual limitations period is determined in ' "light of the provisions of the contract and the circumstances of its performance and enforcement.” ' ” Nicodemus, 612 N.W.2d at 787 (quoting 1A Arthur L. Corbin, Corbin on Contracts § 218, at 311-12 (1963) [hereinafter Corbin]). This language, in context, does not require the reasonable *404 ness of the limitation to be determined case by • case, as applied to the particular facts. The full sentence in that treatise reads as follows:
Although the parties cannot at the time of contracting effectively bargain not to plead a statute or that the time for suit shall be longer than that allowed by statute, it is not against the public interest that they shall then agree upon a shorter time limit than that fixed by statute if the time agreed upon is not so short as to be unreasonable in light of the provisions of the contract and the circumstances of its performance and enforcement.
Corbin § 218, at 311 (emphasis added). The very next sentence in the Corbin treatise states: "Such time limits in insurance policies have often been held valid.” Id. (footnote omitted). The italicized language confirms whether the limitations period is "reasonable” is determined as of the time the contract is entered. The “circumstances of its performance and enforcement” refer to the type of contract at issue, here, a claim for UIM coverage, consistent with a categorical approach. Thus, the UIM provision in Nicodemus was found unreasonable on its face. 612 N.W.2d at 788-89. The categorical approach is equally appropriate here.

. We cited Coyne with approval in Douglass, 508 N.W.2d at 667.

. We have discussed both a “broad coverage” view and a "narrow coverage” view with respect to underinsurance coverage. See Mewes v. State Farm Auto. Ins. Co., 530 N.W.2d 718, 723-24 (Iowa 1995). However, under both "views,” the injured party does not end up better off than he or she would have been with a tortfeasor who was fully insured for the loss that occurred. Id.

. We are concerned about conserving scarce judicial resources. In our view, the approach we have outlined with respect to UIM claims is less taxing on judicial resources than litigating the reasonableness of the two-year deadline as applied case by case. Under an as-applied analysis, courts and perhaps juries would have to make case-by-case determinations based on medical chronologies whether a claim is even timely before getting to the merits of that claim.
We are also concerned about fairness to the injured party. Even under a case-by-case reasonableness approach, this plaintiff sued nearly six years after the accident and three years after discovering the full extent of her injuries. We do not believe Robinson had a reasonable expectation of coverage at that point, given the two-year statute of limitations period for personal injury claims and the corresponding two-year contractual limitations period in her insurance policy.

. Insurers are, of course, free to sell UIM coverage with limitations periods longer than two years or to tie the longer limitation period to the resolution of the tort claim or the date by which it becomes reasonably apparent to the insured his or her damages are likely to exceed the other driver's liability limits. We decline to judicially rewrite or blue pencil the Allied provision allowing two years from the date of the accident. That is for the marketplace to resolve, with rates set accordingly.
Basic economics teaches that, if Iowans really want more extensive coverage and are willing to pay for it, the market will make it available. Moreover, the representatives of Iowa’s elected government already have the ability to mandate more extensive coverage if that is what Iowans want. See Iowa Code § 516A.1 ("The form and provisions of such coverage shall be examined and approved by the commissioner of insurance.”). The fundamental problem with allowing the enforceability of contract language to depend on a case-by-case determination of whether the insured reasonably knew his or her claim exceeded the tortfeasor’s policy limits is that it increases litigation costs while creating an uncertain liability. Insurers have to charge a premium to account for the potential risk that contract language will be enforced as well as the costs of litigating that issue. The coverage that Allied provided in this case is not "illusory.” It is the same contractual limitations period that we approved in Douglass and again in Faeth.

. See also Thomas v. Progressive Cas. Ins. Co., 749 N.W.2d 678, 687 (Iowa 2008) (enforcing named driver exclusion in UIM policy and stating "[t]he power to invalidate a contract *409 on public policy grounds must be used cautiously and exercised only in cases free from doubt” (citation and internal quotation marks omitted)). In Galloway v. State, our court observed, ''[a]s the freedom to contract weighs in the balance when public policy grounds are asserted against the enforcement of a contract, courts must be attentive to prudential considerations and exercise caution.” 790 N.W.2d 252, 256 (Iowa 2010). The Galloway majority nevertheless relied on public policy to invalidate a parent’s preacci-dent liability waiver used for a school field trip. Id. at 258-59. Two dissenters appropriately would have deferred to the legislature to make the policy determination whether to disallow such contracts. Id. at 259. The majority opinion in Galloway recently was described as an "outlier,” with most states enforcing such liability waivers for nonprofit activities sponsored by schools, volunteers, or community organizations. Kelly v. United States, 809 F.Supp.2d 429, 437 (E.D.N.C.2011).