HECHT, Justice
(dissenting).
I cannot join the majority opinion in this case because it fails to properly apply a rule of law employed in recent decisions of this court, it ignores the fundamental difference between tort and contract claims, and condones the marketing of illusory underinsured motorist insurance coverage in Iowa.
Although the Iowa legislature prescribed ten years as the time limit for filing suit for breach of a written contract, Iowa Code § 614.1(5) (2009), our decisions in Faeth v. State Farm Mutual Automobile Insurance Co., 707 N.W.2d 328, 334 (Iowa 2005), and Nicodemus v. Milwaukee Mutual Insurance Co., 612 N.W.2d 785, 787 (Iowa 2000), reaffirmed that an insurer can impose a shorter time limit for filing suit on underinsured (UIM) and uninsured (UM) motorist claims. However, these decisions held that the time limit established in an insurance contract for such suits must be reasonable. Faeth, 707 N.W.2d at 334; Nicodemus, 612 N.W.2d at 787. Our decisions in Faeth and Nicodemus acknowledged and respected the importance of freedom of contract, but they did so with an understanding of the fact that insurance contracts are a different breed. Insurance contracts are “adhesionary” in nature and therefore different than other arms-length agreements. This is illustrated by the fact that Iowans who purchase automobile liability insurance do not have an opportunity to bargain with their insurance company about the amount of time they will be permitted to sue to collect UIM benefits if they are badly injured and later discover the person who caused the injury failed to purchase enough liability insurance to cover the damages. Instead, the insurance company dictates this term of the coverage. The insured takes what the insurance company offers and pays the premium. Because they are largely “take-it-or-leave-it” propositions, public policy considerations underlying the law have led to certain mandates imposed on insurance contracts that are not imposed in other contractual contexts. As the majority has noted, for example, Iowa Code chapter 516A limits insurers’ freedom of contract by requiring companies selling automobile *410 insurance in Iowa to offer UM and UIM coverage as a condition of doing business here. This mandate limiting freedom of contract arose, at least in part, because market forces were deemed inadequate to consistently provide important kinds of insurance protections needed by Iowans.
The common law rule followed by this court in Faeth and Nicodemus similarly limits freedom of contract by allowing insurance companies to shorten the time period which policyholders may file suit to recover UIM and UM benefits only if the time period is reasonable. We implicitly recognized that if left to market forces unrestricted by boundaries of reasonableness, companies selling contracts for UM and UIM coverage could so shorten the time frame for suits against them as to effectively render the coverage meaningless. In Faeth and Nicodemus, we refused to enforce contractual provisions allowing insureds only two years after an injury to sue their insurance companies. Faeth, 707 N.W.2d at 335; Nicodemus, 612 N.W.2d at 789. Our refusal to enforce the shortened contractual periods of two years for filing suit was based on the fact that the factual circumstances confronting Faeth and Nicodemus made it unreasonable to expect them to sue their insurance companies within two years after injury-causing car crashes. Faeth, 707 N.W.2d at 334-35; Nicodemus, 612 N.W.2d at 788-89. Without the common law’s mandate of reasonableness, the insurance coverage purchased by Faeth and Nicodemus to protect them against financially irresponsible drivers would have been illusory.
The majority’s attempts to distinguish our decisions in Faeth and Nicodemus and justify the failure to grant Robinson the protection of the reasonableness standard are singularly unconvincing. Although I grant the accuracy — at the most superficial level — of the proposition that the factual circumstances faced by Robinson during the two years after her injury were different than those faced by the plaintiffs in Faeth and Nicodemus, this proposition proves nothing that would help us decide this case correctly. The factual circumstances faced by Faeth were of course not the same as those faced by Nicodemus, but we found unreasonable and unenforceable as a matter of law the contractual provisions limiting to two years the time in which both of those plaintiffs could sue their insurance companies. The relevance of Faeth and Nicodemus to our decision in this case is derived not from identical facts, but rather from the principle of law we consistently applied in those cases and should apply in this case: A contractual provision requiring an insured to sue for UIM or UM benefits within two years after an injury will not be enforced if it is unreasonable under the circumstances faced by the insured. Faeth, 707 N.W.2d at 334; Nicodemus, 612 N.W.2d at 787. In my view, the factual circumstances faced by Robinson during the two years after her injury provide reasons to deny enforcement of the contractual limitation period that are as equally compelling as those deemed sufficient in Faeth and Nicodemus. In Robinson’s case — just as in Faeth and Nicodemus — a two-year contractual limitation provision so nullified the purpose of the coverage as to make it functionally worthless.
Robinson diligently pursued medical care after her injury and followed the recommendations of her doctors in securing treatment. When she began negotiating with State Farm, the other driver’s insurance company, more than a year after the accident, she had accumulated a little over $5000 in medical bills and had a report from her doctor indicating she was not going to need further medical care and would likely not incur any further medical expenses. She was informed that she had suffered a sprain-strain injury and that *411 her body would slowly, but surely, heal over time with no residual permanent restrictions. When the contractual two-year limitation period expired, Robinson knew she was still experiencing pain in her neck, but this was precisely what her doctor had told her to expect as part of the healing process. She still, therefore, had no reason to understand her damages could exceed State Farm’s $100,000 liability coverage limit insuring the person who caused the injury. Indeed, Robinson’s settlement negotiations with State Farm prior to June 15, 2006, suggest State Farm valued the claim at $8000 and that Robinson and her counsel valued it at $20,000 when negotiations ended. It was not until two years and eight months after the accident that a physician recommended a cervical inter-body discectomy procedure — a recommendation that caused Robinson to first realize the other driver’s liability insurance coverage limit would be insufficient to fully compensate her for her damages. Under these factual circumstances, “[t]he two-year limitation from the date of the accident contained in [Allied’s] policy left [Robinson] with no time to sue following the accrual of [her] claim.” Faeth, 707 N.W.2d at 335. Applying the reasonableness test as we did in Faeth and Nicodemus, I would hold the provision allowing Robinson only two years from the date of her injury to file suit under Allied’s policy is unreasonable and unenforceable under the circumstances of this case. In light of the goal of underinsured motorist coverage — to fully compensate the insured for the injuries suffered — I cannot find reasonable a limitations period which not only began to run, but also expired, before Robinson knew or could have reasonably known her damages would exceed the liability insurance coverage limit of the party who caused the injury.
The majority concludes two years after the occurrence of an injury is, as a matter of law, an adequate length of time for an insured to file suit against his or her UIM carrier because the same time limit applies to suits filed against the party who caused the injury.[7] The majority emphasizes that our decision in Douglass v. American Family Mutual allowed enforcement of a contractual limit of two years for filing suit for UM coverage even though the insured “was not aware that the tortfeasors were judgment proof until the two years had passed.” Douglass v. Am. Family Mut. Ins. Co., 508 N.W.2d 665, 667-68 (Iowa 1993) overruled on other grounds by *412 Hamm v. Allied Mut. Ins. Co., 612 N.W.2d 775, 784 (Iowa 2000). It should be noted, however, that our decision noted no factual circumstances in that case making it impossible or even difficult for Douglass to have learned within two years after the injury that the person who caused it was uninsured. In deciding to enforce the provision limiting the time for Douglass’ suit, we did not suggest that for public policy reasons, or any other reasons, the limitation period for filing suit for UIM benefits should not exceed the period of time allowed to sue the person who caused the injury. Notably, in our more recent-decisions in Faeth and Nicodemus, we enforced a reasonableness standard and held unenforceable contractual provisions limiting to two years an insured’s right to file suit for UIM or UM under circumstances in which their enforcement would have defeated the very purpose, and nullified the essential value, of such coverage.
The majority finds a UIM policy provision matching the limitation periods for suing the party who caused the injury and the insurance carrier providing the UIM coverage reasonable as a matter of law. Their attempt to justify synchronicity of the statutory limitation for filing suits based on tort law with the limitations period for suits based on contract law discounts the legislature’s choice to allow two years for tort suits and ten years for suits based on written contracts. Compare Iowa Code § 614.1(2) (allowing two years from the date of injury to file tort suits), with id. § 614.1(5) (allowing ten years to file suit for breach of a written contract). Robinson’s tort claim against the other driver for personal injuries and her contract claim against Allied for UIM benefits are based on different conduct and discrete legal relationships. Because the claims are distinctly different, there is no compelling reason supporting the majority’s conclusion that suits to enforce them should, as a matter of law, be brought within the same time periods.
All Robinson needed to know during the two years after the car crash in order to file suit against the person who caused the injury is that she was injured in some way. She had that knowledge and complied with the statutory time limit for filing suit within two years after she was hurt. Robinson’s UIM rights against Allied are based upon a completely different civil law framework- — the law of contract. Hamm, 612 N.W.2d at 779. The purpose of the UIM coverage is to finish the “clean-up” of a mess caused by a financially irresponsible person. In order to know she had a UIM claim against Allied within two years after her car crash, Robinson must have known she had been injured severely enough that her damages could exceed the liability coverage limit of the person who caused the injury. Put another way, she needed to know or at least have reason to know the size of the mess created by the crash. The fundamental need of an insured for such knowledge as a prerequisite for filing suit for UIM .benefits was the foundation of our pronouncement in Nicodemus that “[a] contractual limitations provision that would require a plaintiff ‘ “to bring his action before his loss or damage can be ascertained” ’ is per se unreasonable.” Nicodemus, 612 N.W.2d at 787 (quoting Douglass, 508 N.W.2d at 666). We have not made such a statement with respect to the limitation period controlling tort actions because they are fundamentally different than UIM actions.
While it arguably makes sense to require a plaintiff who knows she has been injured to some extent in a motor vehicle crash to file suit for damages within two years against a person who caused the injury, a provision narrowing to two years the time for filing suit for UIM benefits can be very problematic for policyholders. *413 The facts of this case illustrate it is sometimes impossible for an insured to comprehend within two years after an injury the extent of “the mess” left by the person who caused the personal injury and resulting damages. Although the majority’s opinion in this case presents with great care the perspective of the insurance company who seeks to narrow just as far as the law will allow its window of exposure to pay benefits to its policyholder, I think it ignores both the purpose of UIM coverage and the insured’s interest in receiving the protection she reasonably expected for the premiums she paid. We have clearly stated that “ ‘[t]he goal of underinsured motorist coverage ... is full compensation to the victim to the extent of the injuries suffered.’” Hamm, 612 N.W.2d at 779 (quoting Veach v. Farmers Ins. Co., 460 N.W.2d 845, 848 (Iowa 1990)) (characterizing this as the “broad coverage view” of UIM coverage).
I reject the majority’s suggestion that Robinson’s view of the reasonableness standard could leave her better off than she would have been had the other driver been fully insured. Utilizing a strained hypothetical assuming facts not present in Robinson’s case, the majority posits a scenario in which she settled her case against the other driver for twenty percent of the applicable liability limits and later sued Allied for underinsurance benefits. In fact, Robinson actually recovered the full liability insurance limits of the other driver because she prudently waited to settle her claim until she knew how badly she was hurt. If she were now allowed, as I think she should be, a UIM recovery against Allied she would clearly not be better off than she would have been if the other driver had been fully insured. She will merely get what she is entitled to under the policy if she proves her total damages exceed $100,000.
The majority’s opinion speculates that the enforcement of the reasonableness standard would cause an increase in the cost of insurance. Although there is no evidence supporting this assertion in the record of this case, I will assume its truth for the sake of discussion. Should we suppose Iowans would prefer to pay a low premium for UIM coverage that provides no protection under circumstances such as Robinson faced in this case? Or should we believe they would prefer to pay a fair premium for real protection against an injury caused by a financially irresponsible person? In my view, the answer is clear. Iowans would prefer to pay a fair premium for insurance protection that is real rather than illusory. Notwithstanding the majority’s assertion to the contrary, the limitation periods for filing suit to enforce a UIM claim will not be dictated by the laws of basic economics or market forces directed by consumer choices, because consumers are not routinely given a choice regarding that term of a UIM contract. It will instead be dictated by insurers motivated to shorten the length of their obligation to pay claims.
I also believe the majority’s decision will cause greater inefficiency in our civil justice system by forcing some policyholders to sue their insurance companies for UIM benefits before they have reason to believe their damages will exceed the liability insurance coverage limit of the person who caused the injury. The court’s decision in this case will lead some people to file suit against their insurance company for UIM benefits within two years after they are injured and before they have a factual basis for doing so just to be sure they will be protected if their seemingly minor injuries later prove unexpectedly to be worse. This will result in the filing of unnecessary lawsuits tending to increase the costs of litigation and waste precious judicial branch resources, as well as raise serious *414 ethical considerations for attorneys. See Iowa R. Civ. P. 1.413 (“Counsel’s signature to every ... pleading ... shall be deemed a certifícate that: ... to the best of counsel’s knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law.”); Iowa R. Profl Conduct 32:3.1 (“A lawyer shall not bring ... a proceeding ... unless there is a basis in law and fact for doing so that is not frivolous .... ”); Iowa Lawyer’s Oath (“As a zealous advocate and counselor for my client, I will ... [c]ounsel clients to maintain only those disputes supported by law and the legal process.”). The rule adopted by the majority will in some cases place an insured’s attorney in a no-win situation: risk violating one’s ethical obligations as an officer of the court by bringing a frivolous lawsuit against an insurance company for UIM benefits, or risk committing malpractice for failing to file a suit for which a factual basis might exist sometime in the future. The majority’s decision in this case would have required Robinson’s attorney to file what would have appeared to a reasonable person to be a frivolous lawsuit against Allied for underinsured motorist benefits when Robinson’s damages amounted to a small fraction of the other motorist’s liability insurance coverage limit. “The law does not favor bringing litigation ... when the claim has yet no basis in fact or law,” Worley v. Ohio Mut. Ins. Ass’n, 76 Ohio App.3d 531, 602 N.E.2d 416, 419 (1991), and we should not condone as reasonable an interpretation of a contract that would require such conduct. Although the majority correctly observes that Iowa lawyers often file tort and UIM suits at the same time, we should not force them to do so when there is no factual basis for a UIM claim. Accordingly, the majority’s conclusion that Robinson should have filed her action against Allied when she sued the tortfeasor simply misses the mark.
The majority favors the approach taken by the Illinois Court of Appeals in Parish v. Country Mutual Insurance Co., 351 Ill.App.3d 693, 286 Ill.Dec. 516, 814 N.E.2d 166 (2004). Unburdened by the reasonableness constraint adopted by our court years ago and applied in Faeth and Nicodemus, the Illinois court ignored the distinction between the factual basis for a claim against the party who caused the injury and the factual basis required for suit on a UIM claim. Parish, 286 Ill.Dec. 516, 814 N.E.2d at 169. Although we are justifiably cautious in the imposition of public policy-based limitations on the freedom to contract, we mounted that “unruly horse” years ago, and I believe we tamed it in Faeth and Nicodemus. I see no principled reason to emulate the Illinois court’s exemption of counsel handling a UIM claim from the requirement of a good faith factual and legal basis dictated by our rule 1.413. See id., 286 Ill.Dec. 516, 814 N.E.2d at 170. We should never encourage frivolous lawsuits, especially in this time of scarce judicial resources.
I also find unconvincing the majority’s argument that Robinson should have requested a waiver of the two-year limitation provision to secure the UIM protection she purchased with her premium payments. This argument carries the same baggage as the argument that Robinson should have sued Allied within two years after the injury. Both arguments are plausible only if Robinson knew or reasonably should have known within two years that her damages might exceed the negligent motorist’s liability coverage limit. As the record demonstrates Robinson was not armed with such knowledge within two years of her injury, the applicable reasonableness standard did not require her to take either course of action.
*415 For these reasons, I respectfully dissent. I would reverse the district court’s ruling and would remand this case for trial.
WIGGINS and APPEL, JJ., join this dissent.

. Further, it is unclear whether the majority's conclusion that a contractual UIM limitation period matching the tort statute of limitation is "per se reasonable” is intended to overrule the well-settled tenet of contract interpretation that "[t]he reasonableness of a contractual limitations period is determined in ' "light of the provisions of the contract and the circumstances of its performance and enforcement.” ’" Nicodemus, 612 N.W.2d at 787 (quoting 1A Arthur L. Corbin, Corbin on Contracts § 218, at 311-12 (1963)). I disagree with the majority's interpretation of the quoted language from Corbin's treatise. The circumstances of a UIM contract's performance and enforcement to which the esteemed treatise author adverted are those faced by the insured from the time of injury to the time she knows or should know her damages could exceed the liability insurance coverage limits of the other driver. I find unpersuasive the majority’s contention that the language quoted from the treatise refers to a "categorical” reasonableness assessment as of the time the adhesionary contract is formed. A more reasonable interpretation of Corbin’s words would understand "circumstances” is a reference to the actual circumstances in which the limitation period is to be enforced against an insured. Those actual circumstances are, as we have seen in Robinson’s case, unknown and unknowable at the time the UIM coverage commences. Thus, I strongly believe this court took nothing from Corbin’s treatise out of context and correctly expressed the essence of his understanding of the reasonableness constraint in Nicodemus. See Nicodemus, 612 N.W.2d at 787.